[Crim. No. 11519. In Bank. Apr. 10, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. GERALD SESSLIN, Defendant and Appellant.

Hollopeter & Terry and Don H. Terry for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and August J. Ginocchio, Deputy Attorneys General, for Plaintiff and Respondent.

TOBRINER, J.—An information charged defendant and Frank Harper with seven counts of forgery and two counts of grand theft. Defendant and Harper waived trial by jury and stipulated that the trial judge decide the case on the transcript of the preliminary hearing. The trial court found defendant guilty of one count of forgery and dismissed the other eight counts against defendant. Defendant appeals.

We hold that (1) an arrest warrant issued solely upon the complainant's "information and belief" cannot stand if the complaint or an accompanying affidavit does not allege underlying facts upon which the magistrate can independently find probable cause to arrest the accused; (2) sections 806, 813, and 952 of the Penal Code do not authorize the issuance of warrants of arrest based solely upon complaints couched in the language of the charged offense and therefore do not violate the Fourth Amendment; (3) handwriting exemplars taken incidental to an illegal arrest are inadmissible; (4) the admission of defendant's handwriting exemplars constituted prejudicial error.

On January 12, 1966, Police officer Hargraves signed a nine-page felony complaint.[1] On the same day, a judge of the municipal court issued a warrant for the arrest of defendant

---

[1] The first page of the complaint states: "*Jack Hargraves* of the County of Los Angeles who, being first duly sworn on oath, upon information and belief complains and says: That on or about the *16th* day of *December, 1965,* at and in the county of Los Angeles, State of California the crime of *Forgery of Fictitious Name,* in violation of Section 470, Penal Code, a felony was committed by *Gerald Sesslin and Frank Wesley Wright Harper* who, at the time and place last aforesaid, did wilfully, unlawfully, fraudulently and feloniously make, pass, utter and publish a certain fictitious check and order in writing for the payment of money in the sum of *Four Hundred fifty-seven and 00/100* Dollars *$457.00* knowing said check to be fictitious, as aforesaid, with intent then and there to cheat and defraud *Nellie Allen, Commerce Bank, and Handy Payments,* a corporation. Said complainant therefore prays that a warrant may be issued for the arrest of the defendant who may then be dealt with according to law." The italicized portions are those filled in by the complainant Hargraves. The rest of the complaint is a printed form. Each of the remaining eight pages of the complaint relates to one of the remaining eight counts, regarding other fictitious checks allegedly made and passed by defendant and Harper. Each page duplicates the first page of the complaint except for differences in the amount of the check involved and the names of the persons allegedly defrauded. Page 3 of the complaint relates to the $5,800 check which served as the basis of defendant's conviction.

and Harper. On the next day Officer Hargraves, acting pursuant to the warrant, arrested defendant in his office. Hargraves advised defendant of his right to counsel and his right to remain silent and further informed him that he did not have to give any handwriting exemplars. At Hargraves' request, however, defendant wrote out an exemplar. Later, at the police station, he gave further exemplars.

An expert witness testified that the handwriting on the exemplars and the handwriting on the forged $5,800 check were executed by the same person. This testimony comprised the only evidence establishing that defendant signed the fictitious name on the check. Although defendant offered timely objections to the admissibility of the exemplars, the trial court permitted their introduction on the ground that the prosecution obtained them as an incident to a valid arrest and during defendant's legal detention.

## I.

The Fourth Amendment requires that "no Warrants shall issue, but upon probable cause, supported by Oath or Affirmation. . . ."[2] In *Giordenello* v. *United States* (1958) 357 U.S. 480 [2 L.Ed.2d 1503, 78 S.Ct. 1245], the United States Supreme Court held that a complaint which merely stated the affiant's conclusions couched in the words of the statute[3] cannot support a valid arrest warrant. Justice Harlan said: "The purpose of the complaint, then, is to enable the appropriate magistrate, . . . to determine whether the 'probable cause' required to support a warrant exists. The Commissioner must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause. He should not accept without question the complainant's mere conclusion that the person whose arrest is sought has committed a crime.

[2]The California Constitution and the Penal Code contain similar provisions. Article I, section 19 of the California Constitution states that ". . . no warrant shall issue, but on probable cause, supported by oath or affirmation, . . ." Section 813 of the Penal Code provides: "When a complaint is filed with a magistrate charging a public offense originally triable in the superior court of the county in which he sits, if such magistrate is satisfied from the complaint that the offense complained of has been committed and that there is *reasonable ground to believe that the defendant has committed it,* he must issue a warrant for the arrest of the defendant; . . ." (Italics added.)

[3]The complaint in *Giordenello* stated: "The undersigned complainant [Finley] being duly sworn states: That on or about January 26, 1956, at Houston, Texas in the Southern District of Texas, Veto Giordenello did receive, conceal, etc., narcotic drugs, to-wit: heroin hydrochloride with knowledge of unlawful importation; in violation of Section 174, Title 21, United States Code."

. . . [Here] the complaint contains no affirmative allegation that the affiant *spoke with personal knowledge of the matters contained therein*; it does not *indicate any sources for the complainant's belief*; and it does not set forth *any other sufficient basis upon which a finding of probable cause could be made.*'' (Italics added.) (*Id.* at p. 486 [2 L.Ed.2d at pp. 1509-1510].)

Although the Attorney General correctly points out that *Giordenello* rested on the federal rules of criminal procedure applicable to a federal prosecution, *Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509], grounded these rights in the Constitution. In that case, which involved a search warrant issued by a Texas justice of the peace, the United States Supreme Court said, ''The principles announced in *Giordenello* derived, therefore, from the Fourth Amendment, and not from our supervisory power.'' (*Id.* at p. 112 fn. 3 [12 L.Ed.2d at p. 727].) The court also determined that *Ker* v. *California* (1963) 374 U.S. 23 [10 L.Ed.2d 726, 83 S.Ct. 1623], which stated that ''the standard of reasonableness is the same under the Fourth and the Fourteenth Amendments'' (374 U.S. at p. 33 [10 L.Ed.2d 738]), ''must certainly be read as holding that the standard for obtaining a search warrant is likewise 'the same under the Fourth and Fourteenth Amendments.' '' (378 U.S. at p. 110 [12 L.Ed.2d at p. 726].)

*Aguilar* held that, ''Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, . . . the magistrate must be informed of [1] some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and [2] some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, . . . was 'credible' or his information was 'reliable.' Otherwise, 'the inferences from the facts which lead to the complaint' will be drawn not 'by a neutral and detached magistrate,' as the Constitution requires, but instead, by a police officer 'engaged in the often competitive enterprise of ferreting out crime,' *Giordenello* v. *United States.*'' (*Id.* at pp. 114-115 [12 L.Ed.2d at p. 729].)

In *Barnes* v. *Texas* (1965) 380 U.S. 253 [13 L.Ed.2d 818, 85 S.Ct. 942], in a case involving an arrest warrant, the Supreme Court in a *per curiam* opinion cited *Giordenello* and

*Aguilar* as the sole basis for reversal of the conviction.[4]

Barnes demonstrates that *Giordenello* and *Aguilar* must be read together as formulating the requirements of the Fourth Amendment for valid arrest as well as search warrants, and that the standards set forth in *Giordenello,* as clarified in *Aguilar, United States* v. *Ventresca* (1965) 380 U.S. 102 [13 L.Ed.2d 684, 85 S.Ct. 741]; and *Jaben* v. *United States* (1965) 381 U.S. 214 [14 L.Ed.2d 345, 85 S.Ct. 1365], apply to the states through the Fourteenth Amendment. (*Ker* v. *California, supra,* 374 U.S. 23.)

In *Jaben* the United States Supreme Court classified the types of factual showing required to meet the constitutional standards. In that case, which involved a summons ordering the defendant to appear at a preliminary hearing, the Supreme Court said that "Information in a complaint alleging the commission of a crime falls into two categories: (1) that information which, if true, would directly indicate commission of the crime charged, and (2) that which relates to the source of the directly incriminating information." (381 U.S. at p. 223 [14 L.Ed.2d at p. 352].) This classification directly parallels and clarifies the two types of underlying circumstances which *Aguilar* held that a complaint must state in order to support a valid search warrant under the Fourth Amendment.

If such a complaint, supporting an arrest warrant, does not allege the two types of facts delineated by *Aguilar* and *Jaben,* the warrant fails and an arrest made pursuant to it is

---

[4]The Texas Court of Criminal Appeals held the following warrant valid on the assumption that *Giordenello* did not apply to the states: "That heretofore, to-wit: on or about the 29th day of May, A.D. 1962, and before the making and filing of this Complaint, in the County of Lubbock and State of Texas, Billy Joe Barnes and Johnny Leach did then and there unlawfully and fraudulently take from the possession of Southwestern Bell Telephone Company herein called 'owner' good and lawful United States currency of the value of over Fifty and No/100 ($50.00) dollars, the same then and there being the corporeal personal property of the said 'owner,' . . . without the consent of the said 'owner,' and with the intent then and there to deprive the said 'owner' of the value of the same, and to appropriate same to the use and benefit of them, the said Billy Joe Barnes and Johnny Leach against the peace and dignity of the State." (*Barnes* v. *State* (Tex.Crim.App. 1964) 390 S.W.2d 266, 269.)

The complaint in *Barnes,* like the complaints here and in *Giordenello,* is defective in that it merely sets forth the terms of the statute violated and does not allege any underlying facts from which a magistrate could conclude that there was probable cause to believe that the defendant had committed the alleged offense.

illegal. (*Barnes* v. *Texas, supra,* 380 U.S. 253.) [5] Here the complaint did not state (1) any facts which would support the complainant's belief that defendant had committed any felonies as alleged, or (2) any facts relating to the identity or credibility of the source of the complainant's information.

The Attorney General's attempt to distinguish this complaint from those held insufficient to support a valid arrest warrant in *Giordenello* and *Barnes* on the basis that the complaint concludes with a list of "Witnesses" thus misses the mark. The complaint did not allege that any of the listed persons were the source of the information upon which the complainant relied in seeking a warrant for defendant's arrest, or allege any facts connecting defendant with the charged forgeries as to which the "witnesses" could testify. That a number of persons can testify to the crimes alleged in a complaint does not constitute the type of allegation which enables a "neutral and detached" magistrate *independently* to determine on the basis of the evidence before him that probable cause supports the arrest of the person charged in the complaint. (*Aguilar* v. *Texas, supra,* 378 U.S. at pp. 109 fn. 1, 111-115 [12 L.Ed.2d at pp. 725, 726-729] ; *Giordenello* v. *United States, supra,* 357 U.S. at pp. 486-487 [2 L.Ed.2d at pp. 1509-1510].)

## II.

 California's statutory scheme authorizing the issuance of arrest warrants does not violate the Fourth Amendment. When the relevant provisions (Pen. Code, §§ 806, 813, and 952) [6] are read together and construed in light of *Giordenello-Aguilar,* they meet the constitutional test. A complaint based on "information and belief" and couched in the statutory language of the alleged offense may support a

---

[5]The record contains no evidence that Officer Hargraves had probable cause to arrest defendant. We therefore need not reach the question whether there are circumstances under which an arrest made pursuant to an invalid warrant may nonetheless be legal. (Cf. *People* v. *Chimel, post,* p. 436 [67 Cal.Rptr. 421, 439 P.2d 333].)

[6]Section 806 provides: "A proceeding for the examination before a magistrate of a person on a charge of an offense originally triable in a superior court must be commenced by written complaint under oath subscribed by the complainant and filed with the magistrate; . . . Such complaint *may be verified on information and belief.*" (Italics added.)

Section 952 provides: "In charging an offense, each count shall contain, and shall be sufficient if it contains in substance, a statement that the accussed has committed some public offense therein specified. Such

valid arrest warrant *if* the complaint alleges sufficient facts for the magistrate to conclude that probable cause supports the warrant in that the allegations indicate (1) the commission of the crime by the person whose arrest is sought, and (2) the reliability of the information and credibility of its source.

Section 813 of the Penal Code provides that the magistrate *must* issue an arrest warrant if he "is satisfied from the complaint" that "there is reasonable ground" to arrest the defendant. *Giordenello-Aguilar* requires that the magistrate may issue an arrest warrant *only if* he is satisfied from the complaint that there is probable cause to arrest the defendant. The statutory mandate does not conflict with the constitutional standard; the former must be construed in light of the latter. So interpreted, section 813 provides in effect that an arrest warrant *shall issue if, and only if*, "such magistrate is satisfied from the complaint that the offense complained of has been committed and that there is reasonable ground to believe that the defendant has committed it."

That the complaint is based on "information and belief" rather than personal knowledge of the affiant (§ 806), or phrased in terms of the statutory language of the alleged offense (§ 952) does not resolve the issue. The crucial factor lies not in the form of the allegations, but in the sufficiency of the facts alleged "to enable the appropriate magistrate, . . . to determine whether the 'probable cause' required to support a warrant exists." (*Giordenello* v. *United States, supra,* 357 U.S. at p. 486 [2 L.Ed.2d at p. 1509]; *Aguilar* v. *Texas, supra,* 378 U.S. at p. 115 [12 L.Ed.2d at p. 729].)

### III.

 The admission into evidence of the handwriting exemplars procured after defendant's arrest and during his illegal detention violated his rights under the Fourth Amendment. The state may not use evidence to convict an

---

statement . . . *may be in the words of the enactment describing the offense. . . ."* (Italics added.)

Section 813 provides that a magistrate *must* issue a warrant for the arrest of the defendant "if such magistrate is satisfied from the complaint that the offense complained of has been committed and that there is reasonable ground to believe that the defendant has committed it."

Section 813 does not explicitly state that a magistrate may *not* issue an arrest warrant if the complaint does not allege sufficient facts from which he can independently determine that there is probable cause to arrest the defendant. (Cf. *Giordenello* v. *United States, supra,* at p. 486 [2 L.Ed.2d at p. 1509].) Moreover, the Penal Code nowhere prescribes

accused which it obtained by exploiting an illegal arrest or detention. (*Wong Sun* v. *United States* (1963) 371 U.S. 471, 484-485 [9 L.Ed.2d 441, 453-454, 83 S.Ct. 407]; *Mapp* v. *Ohio* (1961) 367 U.S. 643, 655 [6 L.Ed.2d 1081, 1090, 81 S.Ct. 1684, 84 A.L.R.2d 933]; *Silverthorne Lumber Co.* v. *United States* (1920) 251 U.S. 385, 392 [64 L.Ed. 319, 321, 40 S.Ct. 182, 24 A.L.R. 1426]; *People* v. *Stoner* (1967) 65 Cal.2d 595, 598 [55 Cal.Rptr. 897, 422 P.2d 585]; *People* v. *Bilderbach* (1965) 62 Cal.2d 757, 763 [44 Cal.Rptr. 313, 401 P.2d 921]; *People* v. *Cahan* (1955) 44 Cal.2d 434, 445-450 [282 P.2d 905, 50 A.L.R. 2d 513].)

In *People* v. *Bilderbach, supra,* 62 Cal.2d at p. 766, we held that *Ker* v. *California, supra,* 374 U.S. 23, required us to apply the test in *Wong Sun* v. *United States, supra,* 371 U.S. 471, to determine the admissibility of evidence obtained as a result of an illegal arrest, search, or seizure. Here the police obtained a handwriting exemplar shortly after arresting defendant at his office pursuant to an invalid warrant and then required further exemplars after taking him to the police station. As we explained in *Bilderbach,* the Supreme Court in *Wong Sun* held that an illegal arrest immediately preceding the procurement of evidence "rendered [that evidence] inadmissible as the 'fruit' of the agents' illegal action. . . . Under such circumstances it is unreasonable to infer that [defendant's] response was sufficiently an act of free will to purge the primary taint of the unlawful invasion." (62 Cal. 2d at p. 765.) The handwriting exemplars were thus "come at by exploitation of [the] illegality" (*Wong Sun* v. *United States, supra,* 371 U.S. at p. 488 [9 L.Ed.2d at p. 455]) of the arrest and detention. The admission of the exemplars would therefore "thwart the laudable policies underlying the exclusionary rule." (*People* v. *Bilderbach, supra,* 62 Cal.2d at p. 768; see also *Bynum* v. *United States* (D.C. Cir. 1959) 262 F.2d 465, 466-467 [104 App.D.C. 368]; *State* v. *Miller* (1966) 76 N.M. 62 [412 P.2d 240, 244].)

the contents of a complaint which would *require* the issuance of an arrest warrant under section 813. As the Attorney General point. o t, however, reliance in the past has been placed on sections 806 and 952 to determine the nature of the complaint sufficient to obtain a warrant under section 813. Although such reliance contravenes the *Giordenello-Aguilar* rule, sections 806 and 952 are not thereby rendered unconstitutional. Sections 806 and 952 directly relate to accusatory complaints, not complaints to support a warrant. *Giordenello-Aguilar* merely teaches that we not construe these sections to provide that complaints drawn in compliance with them are automatically sufficient to support a valid arrest warrant.

■ We find no basis upon which to conclude that the connection between the exemplars and the illegal arrest has "become so attenuated as to dissipate the taint." (*People* v. *Bilderbach, supra,* 62 Cal.2d at p. 766.) ■ As the Supreme Court explained in *Wong Sun,* "not . . . all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " (371 U.S. at p. 488 [9 L.Ed.2d at p. 455].)

■ That degree of "attenuation" which suffices to remove the taint from evidence obtained directly as a result of unlawful police conduct requires at least an intervening independent act by the defendant or a third party which breaks the causal chain linking the illegality and evidence in such a way that the evidence is not in fact obtained "by exploitation of that illegality." Consent by the defendant, if "sufficiently an act of free will to purge the primary taint of the unlawful [arrest]" (*Wong Sun* v. *United States, supra,* 371 U.S. at p. 486 [9 L.Ed.2d 454]), may produce the requisite degree of "attenuation."

■ The prosecution urges that there was an intervening act of free will between the illegal arrest and the procurement of the handwriting exemplars that dissipated the taint of the primary illegality. The trial court, however, made no finding that the prosecution sustained its burden[7] of showing that defendant freely gave the exemplars. (See *People* v. *Bilderbach, supra,* 62 Cal.2d 757, 763; cf. *People* v. *Henry* (1967) 65 Cal.2d 842, 846 [56 Cal.Rptr. 485, 423 P.2d 557].)

Moreover, on the basis of the record before us we could not characterize as unreasonable an inference that the connection between the illegal arrest and the procurement of the exemplars lacked the requisite attenuation. ■ Defendant produced the first exemplar shortly after the illegal arrest. This illegality tends to vitiate any claimed consent in two respects: (1) the arresting officer secured entry to defendant's office under the purported authority of a warrant, and the entry may have been essential to obtaining consent; (2)

---

[7]*Castaneda* v. *Superior Court* (1963) 59 Cal.2d 439, 443-444 [30 Cal. Rptr. 1, 380 P.2d 641]; *People* v. *Gorg* (1955) 45 Cal.2d 776, 782 [291 P.2d 469].

the consent may have been dictated by an implied assertion of authority by the officer. (See *People* v. *Haven* (1963) 59 Cal. 2d 713 [31 Cal.Rptr. 47, 381 P.2d 927].)

We have noted, *supra,* Officer Hargraves' testimony that prior to obtaining the first exemplar he informed defendant that he had a right to remain silent, a right to counsel at all stages of the proceedings, and a right not to give any handwriting exemplars.[8] Since the rendition of exemplars does not amount to self-incrimination within the meaning of the Fifth Amendment, these warnings were not required for the protection of defendant's Fifth Amendment rights. (*Gilbert* v. *California* (1967) 388 U.S. 263, 266-267 [18 L.Ed.2d 1178, 1182, 87 S.Ct. 1951]; *People* v. *Graves* (1966) 64 Cal.2d 208, 210-211 [49 Cal.Rptr. 386, 411 P.2d 114].) We must consider, however, whether the officer's advice and defendant's response makes unreasonable as a matter of law the inference that the officer secured the incriminating evidence through exploitation of his violation of defendant's Fourth Amendment rights.

The rendition of similar advice, as an added safeguard to insure defendant's voluntary waiver of his constitutional rights, does not, in itself, preclude application of the *Wong Sun* exclusionary rule. Thus in *People* v. *Bilderbach, supra,* 62 Cal.2d 757, defendant contended that his confession was inadmissible both because the record did not indicate that the officers had complied with the requirements of *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], and because the confession constituted the ''fruit'' of an illegal search. We held that even in the event that the prosecution upon retrial could establish that defendant intelligently waived his *Dorado* rights prior to giving the confession, the trial court would still be required to determine whether the taint from the illegal search had been dissipated.[9]

---

[8]Hargraves advised defendant ''that he was entitled to remain silent, that he did not have to tell this investigator anything or answer any questions that I might ask, that he was entitled to an attorney at all stages of the proceedings, including that interview and any interview I might have with him, that he did not have to give me any handwriting exemplars, that if he did give me any handwriting [exemplars], that they would probably or might be used against him in court in a criminal proceeding.''

[9]We noted that ''[e]ven though statements are free of 'oppressive circumstances' and otherwise voluntarily rendered, they are not exempt from attack on constitutional grounds if they are the product of an illegal search.'' (*People* v. *Bilderbach, supra,* 62 Cal.2d 757, 767.)

In *Wong Sun* itself, the United States Supreme Court had to determine whether Wong Sun's confession was the "fruit" of an illegal arrest. In its statement of facts the court noted that prior to his confession an agent of the Narcotics Bureau had advised him of his right to counsel and his right to remain silent. (371 U.S. at p. 476 [9 L.Ed.2d at p. 448].) In holding that the illegal arrest did not taint the confession, the court, however, relied solely "[o]n the evidence that Wong Sun had been released on his own recognizance after a lawful arraignment, and had returned several days later to make the statement . . . ." (P. 491 [9 L.Ed.2d at p. 457].) We conclude, therefore, that although the advice given in the instant case may be a factor showing an intervening act of free will (cf. *People* v. *Stoner, supra,* 65 Cal.2d 595, 600), it does not in isolation demonstrate as a matter of law the requisite attenuation.

■ Defendant furnished the second set of exemplars while illegally detained and with the knowledge that the People already had one sample of his handwriting. "[T]he compulsion inherent in custodial surroundings" (*Miranda* v. *Arizona* (1966) 384 U.S. 436, 458 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]), especially when considered in conjunction with the prior illegally obtained exemplar (see *Fahy* v. *Connecticut* (1963) 375 U.S. 85, 90-91 [11 L.Ed.2d 171, 175, 84 S.Ct. 229] ; *People* v. *Spencer* (1967) 66 Cal.2d 158, 163-168 [57 Cal. Rptr. 163, 424 P.2d 715]), precludes our holding as a matter of law that the prosecution sustained its burden of showing that defendant freely consented to the officers' procurement of the second set of exemplars.

If the question of the admissibility of the exemplars should arise upon retrial, the prosecution and the defense may introduce further evidence bearing on this question. (Cf. *People* v. *Doherty* (1967) 67 Cal.2d 9, 17 fn. 7 [59 Cal.Rptr. 857, 429 P.2d 177] ; *People* v. *Green* (1965) 63 Cal.2d 561, 565 [47 Cal.Rptr. 477, 407 P.2d 653].) In such event, the trial court will determine the admissibility of the exemplars upon its examination of the facts in accordance with the above principles.

■ The prosecution's only evidence that defendant signed the forged check consisted of the handwriting expert's testimony that the signature on the check and the handwriting exemplars were executed by the same person. The admission into evidence of the handwriting exemplars

obtained in violation of defendant's rights under the Fourth Amendment therefore constituted prejudicial error.

In sum, in holding that an arrest warrant issued solely upon the complainant's "information and belief" cannot stand if the complaint or accompanying affidavit does not allege underlying facts upon which the magistrate can independently find probable cause to arrest the accused, we do no more than apply constitutional principles long held and clearly expressed by the decisions of the United States Supreme Court. To do less would be to expose our ruling to the unanswerable charge of constitutional infirmity.

The judgment is reversed.

Traynor, C. J., Peters, J., and Sullivan, J., concurred.

MOSK, J.—I dissent.

Taking the majority conclusions seriatim, I would hold that (1) an arrest warrant based on the complainant's information and belief is valid; (2) sections 806, 813, and 952 of the Penal Code have consistently and reasonably been interpreted in practice as authorizing the issuance of warrants of arrest based upon complaints couched in the language of the charged offense, and the sections are not violative of the Fourth Amendment; (3) handwriting exemplars are admissible regardless of whether they are taken before or after arrest and the nature of the arrest itself is irrelevant; (4) the admission of defendant's handwriting exemplars was neither error nor prejudicial.

Penal Code section 806 specifically authorizes complaints sworn to on the information and belief of the affiant. As a result, a practice has developed among California law enforcement officers of preparing and signing complaints on information and belief, and in so doing the officers on occasion merely employ the language of the criminal statute allegedly violated. This has been deemed appropriate under accepted interpretations of Penal Code sections 806, 813, and 952. No California case has held to the contrary, although all three statutes have been in the code since its adoption in 1872.

Authorities relied upon by the majority are distinguishable. *Giordenello* v. *United States* (1958) 357 U.S. 480 [2 L.Ed.2d 1503, 78 S.Ct. 1245], involved the supervisory power of the federal courts in applying rule 4(a) of the Federal Rules of Criminal Procedure to federal prosecutions. *Aguilar* v. *Texas*

(1964) 378 U.S. 108 [12 L.Ed.2d 123, 84 S.Ct. 1509], considered the specificity requirements and legality of a warrant to search and not to arrest. To date no United States Supreme Court case has categorically rejected California's statutory scheme of permitting a magistrate to exercise his judicial discretion to issue an arrest warrant upon a complaint sworn to on information and belief. In this state *a judicial function,* the magistrate's discretion, is involved in issuance of the warrant of arrest; the complaint is merely an accusatory pleading and the beginning, not necessarily the end, of the magistrate's inquiry. The process is seldom *pro forma* in practice. It is not uncommon for the magistrate to informally interrogate the complainant at length before issuance of the arrest warrant. He must be *satisfied* as to the sufficiency of the complainant's information and belief before exercising his judicial authority (Pen. Code, § 813). Since *Barnes* v. *Texas* (1965) 380 U.S. 253 [13 L.Ed.2d 818, 85 S.Ct. 942], is merely a per curiam opinion, it is not persuasive authority upon which to base categorical rejection of our generally accepted practice. Indeed, the majority concede in section II of their opinion that California's statutory scheme authorizing the issuance of arrest warrants does not violate the Fourth Amendment. I agree generally with their rationale and completely with their conclusion. Since the officers and the magistrate complied with the statutes, the absence of constitutional infirmity in the process should compel us to conclude that the warrant issued here was valid.

Nevertheless, I would join the majority in a caveat to law enforcement agencies for the future. While a complaint may be sworn to on information and belief, it is preferable out of an excess of caution that the complaint briefly indicate the underlying circumstances — the factual information — upon which the belief is based that a violation of law occurred and that the person whose arrest is sought committed the crime.

Even if we were to agree *arguendo* that the arrest warrant here was fatally defective, we would be obliged, under the authority of *People* v. *Bilderbach* (1965) 62 Cal.2d 757 [44 Cal.Rptr. 313, 401 P.2d 921], to exclude only that evidence obtained as the direct and proximate result of the illegal arrest. The test, devised in *Wong Sun* v. *United States* (1963) 371 U.S. 471, 488 [9 L.Ed.2d 441, 455, 83 S.Ct. 407], is " 'whether granting establishment of the primary illegality, the evidence to which the instant objection is made has been come at by *exploitation* of that illegality or instead by means

sufficiently distinguishable to be purged of the primary taint.'" (Italics added.)

Thus if the officers, using the faulty warrant, had seized existing objects from the person or immediate constructive possession of the defendant at the time of the arrest, as the contraband in *Bilderbach,* or had extracted a statement from him, as in *Wong Sun,* such objects or statement would necessarily be denied evidentiary consideration. That is not the case at bench. No evidence was taken here in "exploitation" of an illegal warrant.

Nevertheless the majority find "no basis upon which to conclude that the connection between the exemplars and the illegal arrest has 'become so attenuated as to dissipate the taint'" and they further explain that by "attenuation" they mean "at least an intervening independent act by the defendant or a third party which breaks the causal chain linking the illegality and evidence." They concede that consent by the defendant would provide such intervening act necessary to produce the requisite degree of attenuation.

Accepting the concession that freely given consent purges the taint of an allegedly unlawful arrest under *Wong Sun,* I find it difficult thereafter to follow the labyrinthine course to the majority's conclusion, for no one has heretofore raised any serious issue of the defendant's consent having been freely given.

The handwriting exemplars were obtained by officers during a process of interrogating the defendant in his office. The officers advised him of his constitutional rights as prescribed in *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], and *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].[1] There can be no denial that

[1]This case came to trial on June 20, 1966, one week after the effective date of the rule in *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. (See *Johnson* v. *New Jersey* (1966) 384 U.S. 719 [16 L.Ed.2d 882, 86 S.Ct. 1772].) However, at that time defendant and his counsel stipulated in open court that the cause be submitted on the testimony contained in the transcript of proceedings had at the preliminary hearing. The preliminary examination took place on January 28 and February 1, 1966, at which time *Escobedo-Dorado* and not *Miranda* was the rule in effect. Had counsel later desired to invoke *Miranda,* he had two subsequent opportunities to seek relief from his stipulation: on June 20, 1966, the court continued the case to August 5, 1966, and on that date to August 15, 1966. On the latter date defendant was found guilty of count 3, and the remaining counts were ordered dismissed for insufficiency of the evidence.

adequate *Escobedo-Dorado* admonitions were given and were directly related to the request for handwriting exemplars.[2]

After being given appropriate *Escobedo-Dorado* admonitions, and declining a proffered opportunity to telephone his counsel, the defendant waived his rights and willingly submitted handwriting exemplars. Unquestionably the waiver was knowingly made; the defendant was not a naive victim of police imposition.[3] This case involves a knowledgeable defendant in the familiar, comfortable environment of his own business office; elements in the shrewdly devised plot were a $5,800 check, and elaborate efforts to enmesh an official of a banking institution in the check-passing fraud.

In giving *Escobedo-Dorado* warnings under these circumstances, the officers were more cautious and solicitous of defendant than current authority requires. This court held in *People* v. *Graves* (1966) 64 Cal.2d 208 [49 Cal.Rptr. 386, 411 P.2d 114], that such admonitions need not be given as a prerequisite to obtaining handwriting exemplars. We reasoned (at p. 211) there is ''no support in *Escobedo* for invoking the right to counsel to block scientific crime investigation. Reliance on handwriting exemplars for expert analysis is not a substitute for thorough scientific investigation of crime but an excellent example of such investigation. To preclude the police from asking for such exemplars would foster reliance instead on the very inquisitorial methods of law enforcement that *Escobedo* deems suspect.'' (Fn. omitted.)

The *Escobedo-Dorado* admonitions, though not compulsory under the *Graves* doctrine, clearly provided that ''intervening independent act'' which the majority require to break the causal chain between the arrest they find invalid and the obtaining of the exemplars. Thus even under the formidable standards prescribed by the majority, the exemplars were admissible.

I would not have reached that point, however. Although generally the physical evidence seized pursuant to an arrest depends upon the legality of the arrest to justify its seizure, the taking of exemplars, fingerprints, blood samples. photographs, and similar devices receive their legitimacy

---

[2]See footnote 8, majority opinion, for the quotation from Deputy Sheriff Hargraves' testimony. In addition, at another point the officer testified, ''I asked him if he wished to call an attorney, and he stated that he did not wish to do so at that time.''

[3]Most familiar in this law enforcement field is the saga of the hapless wino who passes a rubber check to his friendly bartender in a neighborhood pub. This is clearly not such a case.

independently as part of approved scientific law enforcement investigatory processes (*People* v. *Graves, supra,* 64 Cal.2d 208, 211; 8 Wigmore on Evidence (McNaughton rev. 1961) § 2265).

The prosecution met its burden of showing that the defendant freely gave the handwriting exemplars on both occasions. The police officers so testified. The record discloses no hint of conflict on the issue, for there is not one line of testimony suggesting an absence of consent. Thus the majority rely solely upon the time element, stressing that the first exemplars were given ''shortly after the illegal arrest.'' Whether the exemplars were given before, during or after arrest is wholly irrelevant, if not given in exploitation of an illegal arrest and if there was an independent intervening act between the purportedly illegal arrest and the writing of the exemplars. As I have shown, the *Escobedo-Dorado* admonitions were such independent intervention.

Finally, the majority opinion contains no supportable rationale whatever for excluding the second set of exemplars taken at a later time at the sheriff's station, other than reference to the ''compulsion inherent in custodial surroundings.'' That issue was settled two years ago in *Graves,* where exemplars taken in the police department offices and again later while defendant was in custody were held admissible in evidence.

The admission of the handwriting exemplars was not error, and consequently not prejudicial. Therefore, I would affirm the judgment.

McComb, J., and Burke, J., concurred.

Respondent's petition for a rehearing was denied May 9, 1968. McComb, J., Mosk, J., and Burke, J., were of the opinion that the petition should be granted.