[Crim. No. 8723. Fourth Dist., Div. One. Aug. 4, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN JORDING ELLERS, Defendant and Appellant.

946

COUNSEL

Appellate Defenders, Inc., under appointment by the Court of Appeal, Jeffrey K. Jayson and Stephen J. Perrello, Jr., for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Alan S. Meth and Rudolf Corona, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WIENER, J.**—Defendant John Jording Ellers appeals the judgment following his jury conviction of sale of heroin (Health & Saf. Code, § 11352 (count one)) and being under the influence of heroin (Health & Saf. Code, § 11350 (count three)). For the reasons we discuss below, we affirm the judgment as to count one and reverse as to count three.[1]

*Factual Background*

On March 2, 1977, Michael Becker and the El Cajon Police Department entered into a written agreement providing for the dismissal of burglary charges against Becker and his girlfriend if Becker would buy some heroin and disclose the identity of the dealer. Becker identified the dealer as Ellers.

---

[1]Our original opinion in this matter was filed on July 26, 1978. However, on September 7, 1978, our Supreme Court granted defendant's petition for hearing, vacating our opinion and transferring the cause to that court. On September 20, 1979, the case was retransferred to this court for reconsideration in light of *People v. Saddler* (1979) 24 Cal.3d 671 [156 Cal.Rptr. 871, 597 P.2d 130]. The parties have submitted supplemental briefing pertinent to our reconsideration of this matter.

After being searched, Becker went with Detective Lowery in an unmarked police vehicle to a place about 100 yards from Ellers' residence in El Cajon. They waited inside the car for Ellers' arrival. Lowery gave Becker $30 in cash, including a $20 bill and a $10 bill, to buy heroin. After spotting Ellers, Lowery drove down the street and into a driveway next to Ellers' residence. Becker approached the front door of Ellers' apartment, through which he saw several people standing inside the apartment. Ellers invited him in. Upon entering, he saw other people buying heroin from Ellers. Reaching over them, he handed Ellers $30, received in exchange one red balloon and a $5 bill, and returned to Lowery's car. The entire transaction lasted only a few minutes.

Becker told Lowery, "It's down," and handed him the red balloon and the $5. Lowery radioed other police units in the area the buy was completed and to meet at the parking lot behind Pernicano's Restaurant about a mile away. At Pernicano's, the officers talked for 10 to 15 minutes and formulated a plan to arrest Ellers. Without Becker, they returned to Ellers' residence to arrest him. Detectives Lowery and Narramore approached the front door of the apartment; Narramore knocked on the door, announced he was a police officer investigating the sale of narcotics, and demanded entry. They saw a man standing near the front door, chewing. After no response for 10 to 15 seconds, Narramore repeated his statement. Still receiving no response and fearful Ellers might be destroying evidence, they entered the premises and took custody of Ellers, who was standing near the doorway. They arrested him for the sale of heroin.

Observation and examination of him by Lowery revealed he was under the influence of heroin. Narramore advised him of his *Miranda* rights. Ellers waived them and agreed to answer questions posed by Narramore. After denying the existence of any heroin on the premises, he was taken to the El Cajon police station. While in custody, he was again examined to determine whether he was under the influence of a drug. A urine sample showed he was under the influence of heroin. Lowery reminded Ellers he had been previously advised and waived his *Miranda* rights, and had agreed to talk with them. Ellers acknowledged this and agreed to answer further questions by the police. Lowery asked him when was the last time he had shot up with heroin, to which Ellers replied, "I haven't. I'm on Methadone." In response to another question, he admitted to being a heroin addict for approximately 18 to 20 years.

When Ellers was taken to the police station, Lowery and another police officer remained at the apartment to secure the premises and to procure a telephonic search warrant. During their waiting period, the officers saw three persons drive up to the residence. One, Sherry Lee Rice, left the car first, and walked in the front door of the apartment carrying $75 in her hand. She was arrested for being under the influence.

*The Motion to Suppress*

Ellers urges the trial court erred prejudicially in failing to exclude tainted evidence, the result of his illegal arrest without a warrant in his apartment. In response, the Attorney General contends Ellers' failure to press for a definitive ruling regarding the suppression of that evidence precludes his assertion the evidence was erroneously admitted at trial. In the alternative, the People assert the court erred in finding the arrest was unlawful.

At the pretrial hearing, Ellers joined the codefendant in a motion to set aside the information and to suppress all the evidence (Pen. Code, §§ 995 and 1538.5). The court found corroboration of a previously untested informant could not be based upon the observations by the officers of the controlled buy conducted for the immediate offense. The court also determined there were no exigent circumstances permitting a warrantless arrest of Ellers in his home. Hence, after finding Becker "was an untested, or uncorroborated, or biased, and a self-serving informer without credibility" as well as concluding there was an absence of exigent circumstances, the court held there was no reasonable or probable cause to arrest Ellers without a warrant and accordingly dismissed the second count relating to possession of hashish which was found after the arrest and constituted the total basis of that charge.

The Attorney General asserts the trial court erred in failing to find the police officers' observations of the controlled buy constituted sufficient independent corroboration of the untested informant's information to establish probable cause for Ellers' arrest. ■ Because we conclude the trial court's determination of the absence of exigent circumstances pursuant to *People v. Ramey* (1976) 16 Cal.3d 263, 275-276 [127 Cal.Rptr. 629, 545 P.2d 1333], was correct, we find it unnecessary to address this assertion.

In *People* v. *Ramey, supra,* our Supreme Court held an arrest without a warrant within the home is per se unreasonable in the absence of exigent circumstances. Exigent circumstances were defined as: "...an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence. There is no ready litmus test for determining whether such circumstances exist, and in each case the claim of an extraordinary situation must be measured by the facts known to the officers." (16 Cal.3d at p. 276.)

The respondent argues the likely exhaustion of the supply of heroin through sale required the officers' return to the apartment to secure it, to prevent further sales, and to prevent the loss of the contraband. The speed with which the arrest had to be accomplished was based upon the substantial traffic at the apartment; prompt action was necessary to prevent the inventory of heroin from being sold out.

We believe the trial court was correct in holding the officers did not have a factual basis from which to reasonably believe the heroin would be sold out during the time a telephonic search warrant was sought. The informant had no personal knowledge concerning the quantity of the heroin held by Ellers that evening. An awareness of heavy traffic without more does not establish the necessity of the immediate action, which was taken. We note the officers waited a period of time before they acted. They first met at a parking lot to discuss the matter. This further supports the superior court's finding there was adequate time to obtain a warrant. The exigent circumstances excusing compliance with *Ramey* were nonexistent. (Cf. *People* v. *Cornejo* (1979) 92 Cal.App.3d 637, 651-652 [155 Cal.Rptr. 238].) Accordingly, the police officers' observations relating to Ellers' being under the influence, the third parties' arriving at the residence following the arrest, and the results of his urinalysis should have been suppressed and excluded. (*Wong Sun* v. *United States* (1963) 371 U.S. 471, 485 [9 L.Ed.2d 441, 453-454, 83 S.Ct. 407, 416]; *People* v. *Sesslin* (1968) 68 Cal.2d 418, 426-431 [67 Cal.Rptr. 409, 439 P.2d 321]; *People* v. *Gardner* (1968) 266 Cal.App. 2d 19, 22 [71 Cal.Rptr. 568].)

*The Failure to Press for a Definitive Ruling*
*Constituted Ineffective Representation*

Relying on *People* v. *Rodgers* (1976) 54 Cal.App.3d 508, 516-517 [126 Cal.Rptr. 719], and *People* v. *Obie* (1974) 41 Cal.App.3d 744,

750 [116 Cal.Rptr. 283] (disapproved on other grounds in *People v. Rollo* (1977) 20 Cal.3d 109, 120, fn. 4 [141 Cal.Rptr. 177, 569 P.2d 771]), the Attorney General contends that defense counsel's failure to press the court for a specific finding on what evidence was to be suppressed relating to the first and third counts at the pretrial hearing constituted a waiver of the right to litigate the issue on appeal.

In *People v. Rodgers, supra,* it was held that where, at a suppression hearing, defense counsel moved that information supplied by an unnamed informant should not be considered as part of the basis for probable cause to arrest, but failed to insist on an appropriate ruling (i.e., order excising police officer's testimony relating to informant), counsel was deemed to have abandoned the point and thus the issue was not cognizable on appeal. ■ Similarly, here, defense counsel's written notice for the motion to suppress all the evidence obtained following the arrest and the trial court's finding of an unlawful arrest mandated the suppression and exclusion of the police officers' observations and the results of the urinalysis. (*Wong Sun v. United States, supra,* 371 U.S. 471, 485 [9 L.Ed.2d 441, 453-454, 83 S.Ct. 407, 416]; *People v. Sesslin, supra,* 68 Cal.2d 418, 426-431; *People v. Gardner, supra,* 266 Cal.App.2d 19, 22.) Hence, defense counsel's failure to secure from the trial court rulings as to the suppression of the evidence obtained following the arrest pertaining to counts one and three constituted a waiver and thus forecloses Ellers from raising his relative assertion on appeal.[2]

■ Guided by the new standard of reasonably competent representation and mindful defendant bears the burden of proof in establishing that "trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates...result[ing] in the withdrawal of a potentially meritorious defense" (*People v. Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859]), we examine the foregoing question to determine whether the failure of Ellers' counsel to act is tantamount to ineffective counsel. "To render reasonably competent assistance, an attorney in a criminal case must perform certain basic duties," including where appropriate the making of motions for the suppression of evidence. (*Id.,* at pp. 424-425.) "When an attorney fails to object to inadmissible, damaging evidence, the review-

---

[2]Our decision is consonant with the legislative intent underlying the enactment of Penal Code section 1538.5. It was adopted primarily "to reduce the unnecessary waste of judicial time and effort involved in the prior procedures, whereby search and seizure questions could be repeatedly raised in criminal proceedings." (*People v. Superior Court* (1971) 4 Cal.3d 605, 610 [94 Cal.Rptr. 250, 483 P.2d 1202].)

ing court is called upon to sift the record to ascertain the relative incriminatory effect of the failure to object." (*People* v. *Sundlee* (1977) 70 Cal.App.3d 477, 482 [138 Cal.Rptr. 834].)

In light of the overwhelmingly incriminatory effect of the officers' observations relating to Ellers being under the influence and the results of the urinalysis showing him to be so, balanced against a record which includes Ellers' admission he had injected a half balloon of heroin the morning of the arrest, but devoid of any showing of his tolerance to the drug and thus, whether he was still under the influence at the time of the arrest, the defense has met its burden of establishing inadequate representation. Defense counsel's unexcused failure to diligently press for appropriate section 1538.5 rulings, at the pretrial hearing, caused the cited, seriously damaging evidence to be admitted at trial. The judgment as to count three must be reversed. (Cf. *People* v. *Sundlee, supra,* 70 Cal.App.3d at p. 485; *In re Garcia* (1977) 67 Cal.App.3d 60, 68 [136 Cal.Rptr. 461]; *People* v. *Dorsey* (1975) 46 Cal.App.3d 706, 719 [120 Cal.Rptr. 508]; *People* v. *Williams* (1971) 22 Cal.App.3d 34, 50 [99 Cal.Rptr. 103]; *People* v. *Coffman* (1969) 2 Cal.App.3d 681, 690-692 [82 Cal.Rptr. 782].) However, as to count one (the sale of heroin), we can say to a moral certainty the incompetence of counsel was harmless beyond a reasonable doubt (*Chapman* v. *State of California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]), since the record stripped of the tainted evidence and highlighted by the controlled buy, the officers' observations relating to it and the testimony of the informant, clearly establishes Ellers' guilt. Accordingly, a reversal of count one is not required.[3]

### The Admissibility of Prior Similar Acts

 Ellers also contends the trial court abused its discretion by admitting evidence of prior similar acts of misconduct by him and evidence relating to police surveillance of his house for a six-month period before his arrest. Becker, the informant, testified he had known Ellers for about 10 years and had purchased heroin from him during

---

[3]In light of the foregoing, it is unnecessary to determine whether Ellers' inculpatory statements made following his unlawful arrest were suppressable pursuant to *People* v. *DeVaughn* (1977) 18 Cal.3d 889 [135 Cal.Rptr. 786, 558 P.2d 872] since their exclusion would have no effect upon our conclusion above. Because of our conclusion, we also do not address Ellers' contentions that (1) the police failed to readmonish him of his *Miranda* rights before the second interrogation when the statements were made, and (2) he could not voluntarily waive his rights since he was under the influence of drugs.

those years. Moreover, he noted, in the past year and a half he had purchased heroin at Ellers' present address. The common method of packaging, according to Becker, was a balloon. Regarding the surveillance evidence, the police officers testified Ellers' residence had been under surveillance for six months before his arrest and observations had been made of heavy vehicle and pedestrian traffic around the residence, persons entering and leaving it throughout the evening hours—usually between 6:30 p.m. and 8 p.m., and short visit durations of less than five minutes.

Evidence of prior criminal conduct is admissible in California when it is relevant to prove a defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" (Evid. Code, § 1101, subd. (b); *People v. Sam* (1969) 71 Cal.2d 194, 204 [77 Cal.Rptr. 804, 454 P.2d 700]; *People v. Perkins* (1970) 7 Cal. App.3d 593, 602 [86 Cal.Rptr. 585]). The evidence relating to Ellers' prior dealing relationship with the informant properly falls within the purview of section 1101, subdivision (b), as it tended to prove knowledge of the narcotic nature of the heroin he sold on March 2, which is an essential element of the crime of selling a narcotic (*People v. Winston* (1956) 46 Cal.2d 151, 158-161 [293 P.2d 40]; *People v. Soto* (1966) 245 Cal.App.2d 401, 406 [53 Cal.Rptr. 832]), and probative of his intent to sell it. (*People v. Pijal* (1973) 33 Cal.App.3d 682, 691 [109 Cal.Rptr. 230].) ■ It is not necessary for the defendant to raise an issue as to his knowledge before the People can introduce such evidence. (*People v. Perez* (1974) 42 Cal.App.3d 760, 766 [117 Cal. Rptr. 195].)

■ In addition, this evidence was probative as to whether the informant indeed knew the identity of the man who sold him the heroin. The surveillance evidence supported the informant's testimony, as the evidence as a whole established a common scheme of sales highly probative of Ellers' identity as the heroin dealer. Hence, in light of the clearly probative value of the evidence challenged, the discretion conferred upon the trial court under Evidence Code section 352 and the proper jury instruction given by the trial court pertaining to the use of this evidence, we hold the court properly admitted the evidence and consequently did not abuse its discretion. (*People v. Pijal, supra*, 33 Cal.App.3d at p. 691.)

■ On cross-examination, over objection, Ellers indicated he paid $12.50 for the half a balloon of heroin he had injected on the morning

of his arrest. It was relevant to the issue of the sale of heroin as it supported the informant's return with the balloon of heroin and $5 in change. Consequently, the court did not err in permitting this testimony. (Evid. Code, § 352; see *People* v. *Montgomery* (1976) 61 Cal.App. 3d 718, 730 [132 Cal.Rptr. 558].)

### *The Trial Court Properly Instructed the Jury*

■ Ellers' contention the trial court erred in failing to instruct, *sua sponte*, on the lesser included offenses of possession for sale (Health & Saf. Code, § 11351) and possession (Health & Saf. Code, § 11350) is equally unfounded. It is settled the trial court need not, even if requested, instruct the jury on a lesser and included offense where the evidence establishes if the defendant was guilty at all, he was guilty of the higher offense. (*People* v. *Morrison* (1964) 228 Cal.App.2d 707, 713 [39 Cal. Rptr. 874]; *People* v. *Pijal, supra*, 33 Cal.App.3d 682, 691; *People* v. *Romero* (1975) 48 Cal.App.3d 752, 758 [121 Cal.Rptr. 800].) Such was the case here, since if the jury believed Ellers had possession of the drug, then they must have believed the possession was exercised in the direct transfer of the drug in the sale.

■ Ellers further contends the trial court erred in instructing the jury pursuant to CALJIC No. 2.62 because (1) the 1976 amendment to Penal Code section 1093, subdivision 6 effectively nullified the validity and applicability of the instruction, and (2) he did not fail to deny or explain any material facts against him.[4]

In *People* v. *Saddler, supra*, 24 Cal.3d 671, 678-681, our Supreme Court rejected a multifaceted challenge of the validity of CALJIC No.

---

[4]CALJIC No. 2.62 formerly provided before revision in 1979: "It is a constitutional right of a defendant in a criminal trial that he may not be compelled to testify. Thus the decision as to whether he should testify is left to the defendant, acting with the advice and assistance of his attorney. In this case defendant has elected to and has testified as to certain facts. If you find that he failed to explain or deny any evidence or facts against him which he can reasonably be expected to deny or explain because of facts within his knowledge, you may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may be reasonably drawn therefrom those unfavorable to the defendant are the more probable. In this connection, however, it should be noted that if a defendant does not have the knowledge that he would need to deny or to explain evidence against him, it would be unreasonable to draw an inference unfavorable to him because of his failure to deny or explain such evidence. The failure of a defendant to deny or explain evidence against him does not create a presumption of guilt or by itself warrant an inference of guilt, nor does it relieve the prosecution of its burden of proving every essential element of the crime and the guilt of the defendant beyond a reasonable doubt."

2.62 which included Ellers' primary contention, holding the instruction "suffers no constitutional or other infirmity and may be given in an appropriate case...." (*Id.*, at p. 681.) In determining the propriety of the giving of the instruction, our duty is to determine whether Ellers failed to explain or deny any fact of evidence in the prosecution's case which was within his knowledge and appropriately within the scope of relevant cross-examination. (*Id.*, at p. 682.) However, a contradiction arising between his testimony and that of a prosecution witness does not constitute a failure to explain or deny. (*Ibid.*)

We conclude the trial court did not err, as the evidentiary record supports the giving of the instruction. For example, on direct examination, Ellers denied being under the influence of heroin when arrested, but during cross-examination, admitted to injecting half a balloon of heroin into his hand that very morning. Thus, while acknowledging his use of heroin the morning of his arrest, he failed to explain how the quantity injected in light of his own drug tolerance warranted a conclusion of him not being under the influence at the time of arrest, since the officers' detailed observations of him indicated he was.

However, Ellers responds that the only thing he could have done to buttress his denial was the submission of medical or scientific analysis on the dissipation of the drug within the human system, which was beyond his personal knowledge as a layman. We disagree. Based upon defendant's track record, he could have testified specifically as to his own drug tolerance and ability to overcome the effect of heroin within a prescribed period of time. In light of his admitted usage requiring his participation in the methadone program, he could have thoroughly described his habit, his usual intake and the comparable durations of the effects of certain dosages of the drug upon his physiological system.

*The Trial Court Did Not Abuse Its Discretion*
*in Refusing to Commit Ellers to CRC*

■ Ellers finally asserts the trial court abused its discretion in refusing to suspend the proceedings and order him to a narcotic rehabilitation center for examination and treatment pursuant to Welfare and Institutions Code section 3051.

Section 3051 provides in pertinent part: "Upon conviction of a defendant for any crime in any superior court, or following revocation of

probation previously granted, whether or not sentence has been imposed, if it appears to the judge that the defendant may be addicted or by reason of repeated use of narcotics may be in imminent danger of becoming addicted to narcotics he shall adjourn the proceedings or suspend the imposition or execution of the sentence and order the district attorney to file a petition for commitment of the defendant to the Director of Corrections for confinement in the narcotic detention, treatment and rehabilitation facility unless, in the opinion of the judge, the defendant's record and probation report indicate such a pattern of criminality that he does not constitute a fit subject for commitment under this section."

Hence, although a defendant is addicted or in imminent danger of becoming addicted to narcotics, the judge need not order commitment proceedings where, in his opinion, the defendant's record and probation report indicate "a pattern of criminality which would make him an unsuitable subject for CRC." (Welf. & Inst. Code, § 3051; *People v. Wisdom* (1975) 47 Cal.App.3d 482, 488 [120 Cal.Rptr. 745]; *People v. Leonard* (1972) 25 Cal.App.3d 1131, 1135 [102 Cal.Rptr. 435].) Indeed, the Supreme Court has noted: "'The concept of "fitness for commitment" [Welf. & Inst. Code, § 3051] flows from the nature of the program itself and the conditions under which it must operate to maximize its chances of success. It must retain its nonpenal character, and those who are receiving treatment must be able to function effectively in a minimum security setting, cooperate with fellow-patients and counselors in group therapy and work programs, and assume a certain degree of responsibility and self-reliance. Not all criminal defendants, unfortunately, exhibit these qualities.' (Belton, *Civil Commitment of Narcotics Addicts in California: A Case History of Statutory Construction*, 19 Hastings L.J. 603, 632-633; see *People v. Sateriale*, 247 Cal.App.2d 314, 317 [55 Cal.Rptr. 500]; *People v. Zapata*, 220 Cal. App.2d 903, 913 [34 Cal.Rptr. 171]; cf. Welf. & Inst. Code, § 3052.)" (*People v. Superior Court (Syvinski)* (1970) 2 Cal.3d 527, 532-533 [86 Cal.Rptr. 83, 468 P.2d 211].) In addition, "'. . . where the trial court has exercised its discretion and determined that the defendant does not constitute a fit subject for commitment under [section 3051], its finding will not be upset if it is supported by the record. [Citations.]' (*People v. Jolke*, 242 Cal.App.2d 132, 143 [51 Cal.Rptr. 171]. See also *People v. Berry*, 247 Cal.App.2d 846, 849 [56 Cal.Rptr. 123].)" (*People v. Flower* (1976) 62 Cal.App.3d 904, 911 [133 Cal.Rptr. 455]; see also *People v. Williams* (1965) 235 Cal.App.2d 389, 403 [45 Cal.Rptr. 427].)

In the case at bar, Ellers has failed to establish an abuse of discretion on the part of the trial court in not committing him to CRC, since the record amply supports the judge's finding. Although the court noted the probation officer was of the opinion Ellers was not "amenable" to treatment at CRC, the probation officer explicitly stated in court his recommendation for prison was based upon the prior ineffectiveness of individual psychotherapy and Methadone treatment, as well as Ellers' activities as a heroin dealer. In light of his prior record revealed by the probation report, combined with a lengthy history of drug use, failure to provide and unemployment, we cannot say as a matter of law the trial court abused its discretion in finding Ellers was unfit for CRC. (See *People* v. *Sateriale* (1966) 247 Cal.App.2d 314, 316-317 [55 Cal.Rptr. 500]; *People* v. *Zapata* (1963) 220 Cal.App.2d 903, 912-913 [34 Cal. Rptr. 171]; *People* v. *Flower, supra*, 62 Cal.App.3d 904, 912.)

*Disposition*

The judgment is reversed as to count three (under the influence of heroin) and affirmed as to count one (sale of heroin).

Brown (Gerald), P. J., and Cologne, J., concurred.