COLEMAN ET AL. *vs.* THE STATE.

1. The assemblage of eight or ten persons by invitation, at a private house or room, to which the public have not the right to go, for the purpose of playing cards, or participating in social amusements, does not constitute such house or room "a public place," within the statute against gaming.
2. If the occupants of a room are in the constant habit of inviting a number of persons to their room for the purpose of playing cards, and others are allowed to come uninvited without any restraint, it is testimony tending to prove the room "a public place," and the jury may so find it.

ERROR to the Circuit Court of Sumter.
Tried before the Hon. Wm. R. Smith.

BLISS & BALDWIN, for plaintiffs in error.

M. A. BALDWIN, Attorney General, for the State.

DARGAN, C. J.—The plaintiffs in error were indicted and convicted of "*playing cards* at *a public place*." Upon the trial it appeared, that the playing took place in a room over a vacant store, which was occupied by several young men as a bed room; that they frequently invited their acquaintances there for the purpose of playing, but no one had the right to come without being invited by some one of the occupants of the room; that their invitations extended to their friends and

acquaintances only, and that they did not intend to make their room public, but considered it their private bed room. It was further shown, that some eight or ten persons were present at the time the playing took place, and one of the witnesses, who was present, stated that he did not remember whether he was invited or not. It was further shown, that though the doors were usually shut, it was not usual that they were locked or so fastened, as to prevent one from entering the room.

Upon this evidence the court instructed the jury, that *prima facie* a bed room was a private place, but it might be made public, and if they believed that eight or ten persons were present in the room whilst the playing was going on—some playing and others by-standers—the doors not being locked, then such an *assemblage* made it a public place; and if the defendants played at that time, or afterwards before the room resumed its private character, they might be convicted of playing at a public place. The court further instructed the jury, that if they should find that frequently, before and about the time of the playing, five or six persons were in the room playing, although they went by invitation, and one or more persons who were not invited were there as by-standers, and had found the door unlocked, and entered without difficulty, then they might find the room a public place within the meaning of the statute. These are the only instructions given by the court to the jury that we think it necessary to examine.

We fully agree with the court below, that though a bed chamber is *prima facie* a private place, yet it may be made public within the meaning of the act; but the second branch of this first charge (if we construe it properly), conveys the idea that the presence of eight or ten persons, who were there by invitation, the doors not being locked, would make it a public place.

In this, we think, the Circuit Court mistook the law. I will not undertake to lay down a general rule, by which we shall, in all cases, determine whether a place is public *or not*. But we cannot hold that the *assemblage* of *eight or ten persons* at a private house or room, by invitation, and to which the public have not a right to go, for the purpose either of partici-

pating in the amusements going on, or partaking in the social enjoyments, will constitute such private house or room a public place, within the meaning of the act. If we were to hold this, we should be governed in our opinion by the number of persons alone, in determining whether the place was public, without regard to any other consideration. This, I think, would be improper; but we must look to the character of the place, the manner of ingress to it, as well as the number of persons that are, or do assemble at it, in deciding whether it is public or private. · Suppose an evening party given, at which a dozen or more were assembled by special invitation, but to which no one could go *unless invited*, without violating the rules of propriety, would this constitute the house a public place? We think not. We cannot hold that a private house or a bed room, at which even a dozen or more are assembled by invitation, loses its character of privacy, and becomes thereby a public place. Nor do we think this view inconsistent with the case of Campbell v. The State, 17 Ala. Rep. 369. The place in that case was a shoemaker's shop, to which the public had the right to go, at least during the day; and though the playing took place at night, yet it was shown that during the playing many persons, without invitation, passed in and out without restraint, though others were refused admittance. These ingredients, as well as the number assembled, were considered by the court, in holding it a public place; but the part of the charge we are considering would make any place public, if eight or ten were assembled together, without regard to any other consideration. This, we hold to be erroneous.

We cannot say, however, that the second instructions given to the ·jury, were wrong; for if the occupants of a room are in the constant habit of inviting a number of persons—say five or six—for the purpose of playing cards, and to which others are allowed to go without being invited, and without restraint, it is certainly testimony tending to prove the room a public place, and a jury may so find it. To hold otherwise, might enable those who wished to follow the practice of gaming, even as an occupation, to escape the law, by having their beds in the room at which the gaming was carried on.

In reference to the charge which we have not particularly noticed, it is enough to say that we can perceive no error in them. The only error is in the first instructions, and for this, the judgment must be reversed, and the cause remanded.