# Thrasher *v.* The State.

### *Gaming.*

(Decided July 6, 1910.   53 South. 256.)

1. *Gaming; Public Place.*—A private bedroom may be termed a public place within the meaning of the statute if it is open to different persons at different times indiscriminately, who may resort to it for gaming without the express invitation of the owner.

2. *Same; Evidence.*—Whether the defendant's bed room was resorted to by persons indiscriminately for gaming so as to render it a public place, was under the evidence in this case, a question for the jury.

3. *Same.*—In a prosecution for gaming, evidence as to the character and location of the dwelling and of the room in which the gaming took place with regard to access which the public may have had to the dwelling and to the room and the distance of the room from the store of one H. was admissible, to establish the character and location of the place; nor was such evidence objectionable because the store of H. had become notorious as a place where other crimes were committed.

4. *Same.*—It was competent to prove that others went to the house and room in question, the frequency of the games played there, the number of persons assembled on such occasions, the time of the day or night when the visits were made where such evidence was limited to a time shortly preceding the alleged offense; and this evidence was competent without first showing that the parties frequenting the room or house on such occasion went there for the purpose of gaming.

5. *Same.*—Where the defendant's room in his father's house was charged to be a public place for gaming, evidence that on Saturdays and Sunday nights many people visited the room and the house, while not of itself sufficient to convert either from a private to a public place, was admissible in connection with the other evidence, and in connection with the defendant's evidence that a number of persons were engaged in gaming in his room on the occasion in question when he returned home and that they were there without invitation from him or from any person possessing the right to invite them, for the purpose of showing that the place was a public place.

6. *Same.*—Where the state alleged that the defendant's room in his father's house was a public place for gaming and that many persons indiscriminately resorted thereto for that purpose, it was

[Thrasher v. The State.]

not error to permit the state to show that the parties frequenting the room went from the store of H. to the room and from the room to the store, although the store was a public place, and known as a place in which the prohibition laws were being violated.

7. *Same; Instructions.*—A charge asserting that the jury should find for the defendant if the evidence failed to show any other gaming in the room, was calculated to mislead the jury to the belief that it was necessary to show some other kind of game than the game shown to have been played, in order to show that it was a public place

8. *Charge of Court; Form.*—The oral charge of the court was not objectionable because parts of it were put in the form of interrogatories.

9. *Same; Particular Facts.*—The court is under no duty to charge the jury that there is no evidence of a particular fact in a case.

10. *Same; Covered by Those Given.*—The court will not be put in error for refusing charges covered by written charges already given.

APPEAL from Gadsden City Court.

Heard before Hon. ALTO V. LEE.

Beecher Thrasher was convicted of playing a game of cards and dice at a public place, and he appeals. Affirmed.

The following charges were refused to the defendant: (1) The affirmative charge. (2) "The court charges the jury that there is no conflict in this evidence that the playing or betting at a game of dice by the defendant took place in the defendant's private bedroom in the residence of his father on Saturday night. There is no evidence that any person or persons ever resorted to said room prior to said Saturday night for the purpose of playing at a game of cards or dice, and unless the evidence shows beyond a reasonable doubt that the defendant or others resorted to said house for the purpose of playing the game of cards or dice, then you must acquit the defendant." (3) "The court charges the jury that the evidence shows without conflict that the game took place in a private room of the defendant in a private house, and before the jury can convict the defendant they must be satisfied from the evidence

beyond a reasonable doubt that people had frequently resorted to said room for the purpose of gaming, and if the jury fails to believe from the evidence, or the evidence fails to show any other gaming in said room, then your verdict must be not guilty."

CULLI & MARTIN, for appellant. The place was not a public place within the contemplation of the statute, and hence, the defendant was entitled to an acquittal. —*Russ v. The State,* 132 Ala. 21; *Cartledge v. The State,* 132 Ala. 18; *Bythwood v. The State,* 20 Ala. 47; *Coleman v. The State,* 20 Ala. 52; *Smith v. The State,* 23 Ala. 41; *Nichols v. The State,* 111 Ala. 60. On these authorities it is insisted that the court erred in the admissions of evidence, in its oral charge, and in refusing charges requested by the defendant.

ALEXANDER M. GARBER, Attorney General, for the State. There is no error of which the defendant can complain, and the judgment of the lower court should be affirmed.—*Russ v. The State,* 132 Ala. 20; *Stobar v. The State,* 116 Ala. 459; *Tolbert v. The State,* 87 Ala. 27; *Coleman v. The State,* 20 Ala. 51.

MAYFIELD, J.—The offense charged is gaming; the scene is defendant's bedroom, in his father's residence; the time is a Saturday night; the game is "craps"; the stake is money; the limit a quarter. Present and participating, the defendant, the two Pattersons (the state's witnesses), and eleven others. The gaming was proved beyond doubt and without dispute; in fact, was confessed on the witness stand by the defendant, except as to the "public place." As to this necessary constitutent of the offense, the defense claimed that the state entirely failed to prove it; indeed, it is contended

that all the proof showed that the game was played at a private place.

What was said by this court in *Russ's Case*, 132 Ala. 20, 31 South. 550, as to a pasture being made a public place, is in part applicable to this case. It was there said: "For the meeting of persons in an abstractly private place of the character of place involved here for the purpose of gaming, to convert such a place into a public place for the occasion, the meeting must be attended in such numbers and by such circumstances of publicity as imply a right and privilege, and opportunity, on the part of the people generally in the vicinity to attend. For other and prior meetings at an otherwise private place such as this to have the effect of converting it into a public place in respect of a game of cards subsequently played there, such other and prior meetings must have been of such character and so repeated and continued up to near the time of the subsequent playing counted on as to stamp the place with such attributes of publicity as involves the idea that people of the vicinage may and are likely to go there at will—the idea of a meeting place for the neighborhood."

Likewise what was said by this court, speaking through the same learned Chief Justice (McClellan), *in Cartiledge's Case,* 132 Ala. 17, 31 South. 553, is even more applicable, in that the place of the gaming in that case was the same as in this case—a private bedroom. This court said: "The evidence for the state tended to show that the defendant played at a game of cards in the bedroom of one Wilson on Commerce street in the city of Montgomery, and that an indefinite number of persons, and different persons at different times, had used this room every week or two throughout the preceding year for the purpose of gaming, and they

came and went there for that purpose whenever they saw fit, and without special invitation of Wilson, the owner. On this evidence it was open to the jury to find that the defendant played a game of cards at a public place, and the court properly refused to give the affimative charge for defendant." And in the same opinion, after condemning the charge requested by the defendant, the court adds the following "moreover" clause: "The charge is absolutely faulty, in that it declares that the playing every night in the year in a bedroom by a party, or some members of a party, composed of the same members, could not make the bedroom a public place under the statute; whereas this party may have been so numerous as to constitute the place practically a common resort of the community for the purpose of gaming, and hence a public place within the terms of the statute."

It has also been held by this court (*Coleman's Case*, 20 Ala. 52), speaking in reference to same statute and same subject, that a bedroom is prima facie a private place; that it may be made public within the meaning of the act, but the presence of eight or ten persons there by invitation, the doors not being locked, does not convert the bedroom into a public place, when such persons are there by invitation and the public have no right to be there; that, in order to determine the question as to whether or not the bedroom is a public place, we must look to the character of the place, the manner of ingress to it, as well as the number of persons who assemble there. The court concludes by saying that a private house or bedroom, at which a dozen or more persons assemble by invitation, does not lose its character of privacy and thereby become a public place.

In *Nichols' Case*, 111 Ala. 60, 20 South. 564, quoting from *Smith's Case*, 52 Ala. 384, it was said: " 'Any

house to which all may go night or day, and indulge in gaming in its various forms, is a public place within the meaning of the statute.' A dwelling house or private room is within the statutory prohibition, if it is open to those who would resort thither to gratify their passion for gaming, and frequently, the greater the air of secrecy which is given the place, the more effectual is the deception. Prima facie, a dwelling is a private place; but where the evidence tends to show that it is used for other than private purposes, and as a resort by those who would indulge in gaming, the question of its being also a 'public place,' within the meaning of the statute, is properly left to the jury.—*Coleman v. State,* 20 Ala. 52; *Jacobson v. State,* 55 Ala. 154; *Johnson v. State,* 75 Ala. 7; *Tolbert v. State,* 87, Ala. 27 (6 South. 284)."

In line with what is said in the cases above referred to, it was competent for the state to prove the character and location of the dwelling and of the room in which the playing took place, with regard to the access which the public may have had to the dwelling and to the room; and for this purpose we do not think that the trial court erred in allowing the state to prove how far the room in question was located from the store of Ernest Hubbard, nor do we think the fact that such store had become notorious as a place for the violation of other laws would render such evidence inadmissible. The court limited such evidence to the question of simply locating the room in question. It was likewise competent for the state to prove the fact of other parties going to the house and to the room, the frequency of such occurrences, the number of persons on such occasions, and the time of day or night in which the visits were made; such visits being limited, as they were by the trial court, to the time shortly preceding

the time of the alleged offense. Nor was it necessary for the state's counsel to first prove that the parties frequenting the room or house on these occasions were going there for the purpose of gaming. It would be difficult to prove this except by the witnesses themselves and this might tend to incriminate them. The jury might infer the purpose of their visits to the room from all the facts and attendant circumstances, though there was no direct proof as to the purpose of their visits.

It is true, as contended by defendant's counsel, that the mere fact that on Saturdays and Sundays many people visited the room of the defendant and the house of his father did not of itself convert the room or the house from a private to a public place. But this evidence was admissible, in connection with other evidence that numerous parties, shortly before the time of this offense, had visited the house without invitation, and without any special relation or connection being shown between the visitors and the inmates or inhabitants of the house; and especially so in connection with the defendant's own evidence that a number of persons were engaged in gaming in his room, on the occasion in question, when he returned home, and that they were without invitation from him, and, so far as the record shows, from any other person professing to have the right to invite them.

Likewise there was no error in the court's allowing the state's witness to testify as to the place from which they went to the room of the defendant, nor that they went from Hubbard's store to this room, nor from the room to Hubbard's store. Nor did the fact that Hubbard's store was a public place, and its being known as a place in which the prohibition laws were being violated, render such evidence inadmissible. It was competent to show that there were crowds of people passing

[Thrasher v. The State.]

from this store to this room, and while, of course, the defendant was not responsible at all for the character of Hubbard's store, nor could its character convert his bedroom from a private to a public place because of its proximity, yet the fact that crowds of people frequently passed from this public place to this private place, and entered the latter without invitation, was a circumstance for the consideration of the jury in determining the question as to whether or not this bedroom, at the time of the alleged offense, was a public place within the meaning of the statute.

It is true, as contended by the defense, that there was no direct or positive proof of any other games being played in this room than the one in question; but we cannot say that there was no evidence from which the jury might infer that the room had been and was then used as a place of resort for gaming, and that it was thus converted from a private to a public place within the meaning of the statute. We cannot agree with counsel for the defense that there was no evidence tending to show that the public had a right to go to this house or room in question. There was evidence showing that great numbers of people did frequent the house shortly before the time in question. It also appeared from the defendant's own testimony that he found quite a number engaged in a game when he returned, and it was not shown that they were there by his invitation, or by that of anyone else professing to have authority. There is evidence tending to show that the public went and came at pleasure.

We see no error in that part of the oral charge to which exceptions are reserved, in which the court states: "Was the defendant's room open to the public, or to any person that desired to go in and participate in the game? What do you say about it? I can't tell you."

[Thrasher v. The State.]

And again: "What does the evidence show the character of the house to have been on Sunday, Sunday afternoons and Saturdays? What do you say about it?" And yet again: "If you reach the conclusion from the evidence that any party or part of the public could go in and play that desired to go, then you consider the fact that people were at the house on Saturdays and Sundays." "If you find that anybody could go in that house when they desired, and play dice or bet on dice, I charge you that defendant would be guilty if he played dice or bet on the game that night." The court clearly and repeatedly submitted and left to the determination of the jury the material and disputed questions as to whether or not the room in which the playing was done was shown by the evidence, beyond a reasonable doubt, to have been converted from a private to a public place, within the meaning of the statute. The court repeatedly instructed the jury that the residence and room in question were prima facie a private, and not a public place, and we see no objection to those parts of the oral charge to which exceptions were reserved, because they were put in the form of interrogatories by the court to the jury. It follows that the affirmative charge was properly refused to the defendant.

Charge 2 was properly refused, for that the trial court is under no duty to charge the jury that there is no evidence of a given fact in the case.

Charge 3 was properly refused, because it was calculated to mislead the jury, in that it requested a verdict for the defendant if the evidence failed to show any other gaming in said room. The jury might infer from this that it was necessary to show some other kind of gaming than that of "craps," in order to show it to be a public place.; that being. the game the defendant was

playing in the room. The charge also invaded the province of the jury.

The court, at the request of the defendant, gave a great number of written charges, as to the necessity and character and sufficiency of proof to show that defendant's bedroom had been converted from a private to a public place within the meaning of the statute; some of them being probably too favorable to the defendant. This was the only disputed issue in the case; the defendant having admitted on the stand all the other necessary elements and constitutents of the offense charged. Among those charges were the following: "The court charges the jury that the burden is on the state to show to the jury from the evidence, beyond a reasonable doubt, that the public generally resorted to the bedchamber of Beecher Thrasher from time to time for the purpose of gaming, before the jury would be authorized to find the defendant guilty. The court charges the jury that the private bedroom of the defendant is not a public place per se, and unless the public or people in such number frequented said room for the purpose of gaming as to make it a public place, I charge you, you cannot find the defendant guilty, even though you are satisfied beyond a reasonable doubt that the defendant played and bet at a game of cards or dice. (2) The jury can consider nothing against the defendant except that which clearly appears in the evidence. (3) Before the jury would be authorized in returning a verdict of guilty in this case, the state must show by the evidence, beyond all reasonable doubt and to a moral certainty, every material averment in the indictment. (4) The court charges the jury that there is no dispute in the evidence in this case that the alleged gaming took place in the defendant's bedroom in a private house, and the state must show by the evidence

[Thrasher v. The State.]

beyond a reasonable doubt that said bedroom became a public place by reason of the fact that the public or people in such number resorted to said room for the purpose of betting at games of cards or dice, or some substitute for cards or dice."

The defendant requested a number of charges which were refused; but it is unnecessary for us to decide whether they were correct or not (though they have been examined, and we find no error in their refusal), for the reason that the court, in the oral instruction, had repeatedly charged the law correctly upon the only disputed question involved, and had so repeatedly charged the law in the language requested by the defendant in his written charges upon this same proposition. The defendant had no right to have the court further repeat or give other charges stating practically the same identical question. Trial courts are not required to give the same charge or charges two or more times. Parties are entitled to have proper charges given once, but not more than once.

It affirmatively appears that no injustice was done the defendant, unless it was done by the jury. We find no error in the record, and the judgment must be affirmed.

Affirmed.

DOWDELL, C. J., and MCCLELLAN and EVANS, JJ., concur.