[Crim. No. 8094. First Dist., Div. One. Dec. 12, 1969.]

In re LINDA STEINKE on Habeas Corpus.

[Civ. No. 27079. First Dist., Div. One. Dec. 12, 1969.]

LINDA STEINKE, Petitioner, v.
THE MUNICIPAL COURT FOR THE SAN JOSE-MILPITAS-ALVISO
JUDICIAL DISTRICT OF SANTA CLARA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

(Consolidated Cases.)

## COUNSEL

Herrick, Gross, Mansfield, Harvey & Miller and Joseph B. Harvey for Petitioner.

No appearance for Respondent.

Thomas C. Lynch, Attorney General, Derald E. Granberg, John T. Murphy and Horace Wheatley, Deputy Attorneys General, for Real Party in Interest.

## OPINION

**MOLINARI, P. J.**—In this proceeding petitioner seeks a writ of habeas corpus to discharge her from constructive custody, a writ of prohibition prohibiting proceedings in the municipal court in the action against her, and a writ of mandate compelling the municipal court to quash the warrant upon which she was arrested and to dismiss the complaint against her. We issued an alternative writ of prohibition and an order to show cause why petitioner should not be released from any custody or constructive custody.

Petitioner was charged with two counts of lewd and dissolute conduct in a public place or in a place open to the public or exposed to the public view, in violation of Penal Code section 647, subdivision (a).[1] By a "Declaration for Arrest Warrant" attached to the complaint and filed at the same

---

[1] Unless otherwise indicated, all statutory references hereinafter made are to the Penal Code.

time, facts were set forth which alleged that on two separate occasions petitioner masturbated a police informant in a room at the Alcron Massage Parlor in San Jose. This declaration made by Sergeant Brune of the San Jose Police Department, upon which the warrant for petitioner's arrest was issued, was supported by unsworn statements of various informants who are not identified therein except by name and address. The parties have assumed that the sufficiency of the complaint is to be determined from all of the facts, including those alleged in the said declaration. This court adopts the same assumption.

The issues presented are (1) whether the complaint states facts to charge the commission of a criminal offense, and (2) whether the arrest warrant was issued on probable cause.

Adverting to the first issue, we observe that petitioner claims that since the alleged acts took place in a closed room within the massage parlor, they were not lewd acts committed in a public place or a place open to the public or a place exposed to public view. The Attorney General, in turn, argues that subdivision (a) of section 647 prohibits lewd and dissolute conduct in places open to the public even though the acts complained of were not exposed to public view.

At the outset, it should be noted that no constitutional challenge has been made to the validity of subdivision (a) of section 647. Our inquiry, therefore, is limited to the determination of whether the facts stated in the complaint come within the prohibitory language of this statute which provides that every person "Who solicits anyone to engage in or who engages in lewd or dissolute conduct in any public place *or* in any place open to the public *or* exposed to public view" is guilty of disorderly conduct, a misdemeanor. (Italics added.) This language clearly indicates by the use of the disjunctive "or" that the subject statute can be violated if the proscribed conduct takes place in any one of three places, that is, a public place, a place open to the public and a place exposed to public view. Accordingly, exposure to public view is not a necessary requirement if the acts occur in a public place or in a place open to the public. (See *People* v. *Hensel* (1965) 233 Cal.App.2d 834, 838 [43 Cal.Rptr. 865]; *People* v. *Belanger*, 243 Cal.App.2d 654, 656 [52 Cal.Rptr. 660].)

We here observe that petitioner does not contend that masturbation is not lewd and dissolute conduct,[2] but urges that such conduct is not

---

[2]"Lewd" is defined to mean: "2a: sexually unchaste or licentious: dissolute, lascivious b: suggestive of or tending to moral looseness: . . ." "Dissolute" is defined to mean: "2: lacking restraint: . . . esp: loose in morals or conduct: wanton, profligate, licentious . . ." (Webster's Third New International Dictionary.) The terms are often used interchangeably. (*People* v. *Babb*, 103 Cal.App.2d 326, 330 [229 P.2d 843].)

proscribed by subdivision (a) of section 647 if it is done in private. In this regard we note that it is clear that in adopting subdivision (a) of section 647 the Legislature did not intend to create a new substantive offense which would make any lustful, libidinous, lascivious or unchaste conduct not otherwise prohibited by law a crime, even though it were committed in private. (Cf. §§ 268, 269a, 269b, 285, 286, 288, and 288a.) Accordingly, our inquiry is whether the conduct here charged was allegedly committed in private, in which case it would not be violative of subdivision (a) of section 647, or whether it was allegedly committed in a place open to the public or exposed to public view in which case the conduct would come within the purview of the statute.

Adverting to the question presented we observe that the Attorney General does not contend that the subject conduct occurred in a place exposed to public view nor is any contention made that the room in which the alleged acts of masturbation took place is a public place. The basis of the claim that the alleged conduct is proscribed is that petitioner engaged in the subject conduct *in a place open to the public*.

Petitioner cites numerous cases from other jurisdictions to support his contention that the crime of lewdness is committed only if the acts done are exposed to public view. These cases are not persuasive because the California statute prohibits lewd acts committed in three specified places while the statutes in most other jurisdictions merely prohibit open and gross lewdness, leaving the courts considerable latitude in interpreting what is meant by open lewdness.[3]

Petitioner also places strong reliance on the common law principle that the offense of lewdness consists of the commission of *open and public* acts of indecency. (See Lewdness, 53 C.J.S., § 2a, p. 5; 37 C.J.S., Fornication, § 1b, p. 118; 33 Am.Jur., Lewdness, Indecency and Obscenity, § 2, pp. 16-17; Annotation, Vagrancy (1921) 14 A.L.R. 1482, II Adult Vagrancy, b. Particular acts, 8 Lewdness, pp. 1498-1500, 10 Moral perversion, pp. 1500-1501.) ■ However, we point out that it is apparent that the Legislature has, by the enactment of the subject statute, enlarged the scope of the common law offense of lewdness to include acts of indecency in a public place or in a place open to the public even though they may not be exposed to public view.

Considerable reliance is placed by petitioner on a statement by Professor

---

[3]Thus, in *State* v. *Pedigo*, 190 Mo.App. 293 [176 S.W. 556], the acts of lewdness were committed at night in an empty school house. The reviewing court held the acts to be open and gross because they were committed either in the actual presence of or such close proximity to other persons that they knew that the acts were being committed by the use of the ordinary senses of hearing and seeing, although by reason of darkness the acts were not actually seen by bystanders. (P. 558.)

Arthur H. Sherry[4] in his study and recommendation appearing in 48 California Law Review (1960) 557, which led to the enactment of the subject statute. In regard to subdivision (a) of the statute proposed by him, now the existing statute, Professor Sherry states: "This provision is drafted to cover the subject matter of existing subsection 5 [of former 647] which provides that a 'lewd and dissolute person' is a vagrant. It departs from the concept of status and deals directly with socially harmful lewd or dissolute conduct, that is, *such conduct when it occurs in public view.*" (P. 569; italics added.)[5] Although this language would seem to indicate that Professor Sherry's understanding of the proposed statute was that the crime proscribed was intended to encompass only acts exposed to public view, it is apparent that his statement was directed to a comparison of the existing statute which dealt with the concept of *status* as distinguished with the concept of *conduct* under the proposed statute. In referring to such conduct as that which "occurs in public view," Professor Sherry obviously had in mind not only lewd or dissolute conduct which is *exposed* to public view but also that which is capable of or susceptible to such exposure because it occurs in a public place or in a place open to the public. It seems clear that if Professor Sherry intended the narrow construction that the lewd conduct proscribed was that which occurs only in a place exposed to public view there was no necessity for the language "in any public place or in any place open to the public." This analysis, we believe, is that intended by the Legislature when it enacted the subject section with the disjunctive language. (See *People* v. *Hensel, supra,* 233 Cal.App.2d 834, 838; *People* v. *Belanger, supra,* 243 Cal.App.2d 654, 656-657; 13 U.C.L.A.L.Rev. 643, 681-685.) In *Belanger* it was specifically noted that by subdivision (a) of section 647 "the Legislature has provided that certain acts shall constitute disorderly conduct whether in a public place or 'in any place open to the public or exposed to public view.'" In that case it was held that a person under the influence of intoxicating liquor sitting in an automobile upon a street is in a public place, and that for the purposes of subdivision (f) of section 647, since he was in a public place, it was immaterial whether defendant was exposed to public view. (P. 657.)

The only two California cases interpreting subdivision (a) of section 647 which have come to our attention are *People* v. *Hensel, supra,* and *People* v. *Dudley* (1967) 250 Cal.App.2d Supp. 955 [58 Cal.Rptr. 557]. In

---

[4]Professor of Law and Criminology, University of California at Berkeley.

[5]The Assembly Interim Committee on Criminal Procedure, in recommending that the vagrancy statute be repealed and that it be replaced by the enactment of Penal Code section 647, substantially as proposed by Professor Sherry, quoted this language from the California Law Review in support of its statement that the committee was in full agreement with subdivision (a) of the proposed statute. (22 Assembly Interim Com. Report No. 1 (1959-1961) p. 13; 2 Appendix to Journal of Assembly, Regular Session.)

*Hensel,* a conviction for violation of this subdivision was affirmed where a police officer testified that he observed the defendant and his codefendant engage in an act of oral copulation in the men's toilet of a public park. This observation was made through a ventilation screen. The rationale of the decision was that, although the officer was hidden, the defendant's conduct occurred in a place open to view by anyone entering the restroom. (P. 836.) The reviewing court observed, moreover, that subdivision (a) can be violated by conduct in any public place or in any place open to the public or exposed to public view. (P. 838.) In *Dudley* it was held that the public solicitation of an undercover vice officer who was standing on a public sidewalk of a lewd act (oral copulation and sodomy) which was to take place in private comes within the provision of subdivision (a) of section 647. (P. 959.)

Adverting to the specific issue in the present case as to whether the room in which the alleged act occurred was a place open to the public, we note that in *In re Zorn,* 59 Cal.2d 650, 652 [30 Cal.Rptr. 811, 381 P.2d 635], a barber shop was held to be a public place within the meaning of subdivision (f) of section 647 providing that a person who is under the influence of intoxicating liquor in a public place is guilty of disorderly conduct.[6] The Supreme Court, in defining the term "public place," observed that "public" has been defined as " 'Common to all or many; general; . . . Open to common, or general use, participation, enjoyment, etc.; . . . a *public* place . . .' [Citations.]" (P. 652.)[7] (See *People* v. *Belanger, supra,* 243 Cal. App.2d 654, 657.)

 In the light of the foregoing authorities it is clear that a massage parlor which is open to common or general use is a public place, at least with respect to the portions of the parlor which are used in common by its patrons. It is equally apparent that such premises are open to the public. In the instant case the facts alleged upon the basis of the information supplied by the several informants suffice to show that the Alcron Massage Parlor was a place where members of the public were invited for the administra-

---

[6]In other jurisdictions we note that the following places have been held to constitute a "public place": a room in a house of prostitution where six women made indecent exposures of their persons for hire in the presence of five men (*People* v. *Bixby* (1875) 67 Barb. (N.Y.) 221; shed room of house occupied as a private residence used for gambling (*Nickols* v. *State,* 111 Ala. 58 [20 So. 564, 565]; private bedroom used for gambling (*Thrasher* v. *State,* 168 Ala. 130 [53 So. 256, 258-259]; private room in a hotel used for gambling (*Comer* v. *State,* 26 Tex.App. 509 [10 S.W. 106, 107-108]; mercantile establishment (*State* v. *Fenner,* 263 N.C. 694 [140 S.E.2d 349, 352]).

[7]In *State* v. *Boles,* 5 Conn.Cir. 22 [240 A.2d 920], the reviewing court in construing the meaning of a "public place" in connection with a statute making it a crime to be guilty of disorderly conduct in a public place, held that such a place is one in which members of the public attend for reasons of business, entertainment, instruction or the like. (P. 927.)

tion of a body massage for which they paid a fee. Moreover, petitioner does not contend that a massage parlor is not a public place or a place open to the public, but asserts that the room in question, although part of the public place known as a massage parlor, ceased to be such when it was appropriated by the patron for the purpose of having a massage administered to him in private.

We are not persuaded by petitioner's argument. A room within the confines of a public massage parlor does not, while said parlor is open for business, lose its character as a "place open to the public" when the doors of the room are closed for the purpose of administering a massage within the privacy of its walls. Here the evidence is such as to indicate that the massage parlor was open to the public for the purpose of administering legitimate body massages and that the rooms in the massage parlor were used for this purpose. It is equally apparent that the rooms on occasions were used for the performance of the lewd act alleged in the instant case. Accordingly, the inference is permissible that the room in question was open to different persons at different times, indiscriminately, not only for the purpose of administering a legitimate body massage but for the commission of a lewd act as well. Moreover, the alleged lewd acts charged in the present case took place at a time when the room was being used for the very purpose for which the public was invited. Under these circumstances, we are persuaded that the closing of the door of a room in the subject premises does not make the room any less a place open to the public so long as it is used, as here, during business hours for the conduct of a public purpose and is occupied temporarily by the patron and a masseuse while that business is consummated. Such use, therefore, does not convert the room from a public room to a private room.

We are persuaded to the foregoing conclusion, moreover, by the analysis that the gist of the offense proscribed in subdivision (a) of section 647 is the presence or possibility of the presence of some one to be offended by the conduct. (See *People* v. *Hensel, supra,* 233 Cal.App.2d 834, 836.) In the instant case persons who responded to the public invitation to enter upon the premises for the purpose of obtaining a legitimate massage had a right to rely on the representation implicit in the name "massage parlor" that it was what its name purports to be, a massage parlor, and not a place where lewd acts are committed. Under the state of the record the inference is permissible that persons responding to the legitimate purpose of the invitation were on the premises when lewd acts were being performed in some of the rooms. Accordingly, the possibility of annoyance to members of the public is apparent. Since the massage parlor and its rooms constituted a place open to the public, we apprehend that the offensiveness of lewd acts committed in such a place, though not literally exposed to public view, lies in annoyance

to or the possibility of annoyance to members of the public present on premises where such acts are committed. (See *People* v. *Belanger, supra,* 243 Cal.App.2d 654, 657-662.)

The situation presented here is analogous to that noted in *People* v. *Dudley, supra,* 250 Cal.App.2d Supp. 955, 959, where the court noted the following effect of mere solicitation: "We cannot believe the Legislature intended to subject innocent bystanders . . . to the public blandishments of deviates so long as the offender was smart enough to say that the requested act was to be done in private. . . . Moreover, it is not to be forgotten that to some a homosexual proposition is inflammatory, which public utterance might well lead to a breach of the peace." So here it can be inferred that the innocent patron, as well as the patron seeking sexual satisfaction, as a member of the public admitted to the massage room, would be subjected to solicitation to engage in the subject lewd contact.

Petitioner's strong reliance on *Bielicki* v. *Superior Court,* 57 Cal.2d 602 [21 Cal.Rptr. 552, 371 P.2d 288], is misplaced. In that case the charge was for a violation of section 286 (the infamous crime against nature) and the issue was whether there had been an illegal search and seizure of evidence. The Supreme Court held that the police officer's clandestine observation of unknown occupants of toilet booths by means of a pipe installed in the ceiling of a public restroom contituted an unreasonable search. In *Bielicki* the defendants were not observable by anyone entering the restroom, and the argument that the officers entered upon premises open to the general public and merely saw what any member of the public would have seen was rejected on the basis that the *roof* of the restroom was not a portion of the premises open to the general public. (Pp. 606-607.)

We now turn to the issue whether the arrest warrant was issued on probable cause. Sergeant Brune's declaration states that he is satisfied there is probable cause for the arrest of the defendants named in the complaint[8] on the basis of written reports and statements attached to and made a part of the declaration. The declaration states that Brune personally reviewed each of said reports and statements which "are official records prepared by persons known to me to be law enforcement officers or employees of other governmental agencies as shown on said reports" and that he believes them to be true and reliable. The subject reports and statements, which were unsworn, were purported to have been made by persons designated as Patricia Rambo, Elwood Gray and Walter Speidel. The status of these persons does not appear in these reports and statements, except that two of the reports made by Patricia Rambo and one of the

---

[8]In addition to petitioner, four other persons were named as defendants in the complaint.

reports of Walter Speidel appear to have been made on offense report forms of the San Jose Police Department. The Rambo reports bear her name in typewritten form under the designation "Name of Officer" followed, in parenthesis, by the designation "Sgt. Brune." Petitioner was implicated by the statements of only one of the informants, Walter Speidel, to the effect that on two separate occasions petitioner masturbated him in a room at the Alcron Massage Parlor. The question thus raised is whether, upon the basis of the subject declaration, the magistrate was justified in issuing the warrant for petitioner's arrest.

■ Based upon the decision of *Aguilar* v. *Texas,* 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509], a complaint based on information and belief may support a valid arrest warrant in California if the complaint alleges sufficient facts for the magistrate to conclude that probable cause supports the warrant in that the allegations indicate (1) the commission of the crime by the person whose arrest is sought, and (2) the reliability of the information and credibility of its source. (*People* v. *Sesslin,* 68 Cal.2d 418, 425-426 [67 Cal.Rptr. 409, 439 P.2d 321].) If these allegations are absent, the warrant fails and an arrest made pursuant to it is illegal. (*People* v. *Sesslin, supra,* at pp. 424-425.)

■ The first of the two requirements enunciated in *Sesslin* has been formulated by the cases to mean that the statement of the informer in the affidavit must be factual in nature rather than conclusionary and must indicate that the informer had personal knowledge of the facts related. (*People* v. *Hamilton,* 71 Cal.2d 176, 180 [77 Cal.Rptr. 785, 454 P.2d 681]; *People* v. *Scoma,* 71 Cal.2d 332, 336, fn. 3, 337 [78 Cal.Rptr. 491, 455 P.2d 419]; *People* v. *Tillman,* 238 Cal.App.2d 134, 137-138 [47 Cal.Rptr. 614].) In the instant case this requirement is satisfied. The report of the illegal activity is factual in nature and clearly indicates that informants had personal knowledge of such activity.

The second requirement demands that the affidavit must contain some underlying factual information from which the magistrate issuing the warrant can reasonably conclude that the informant was credible or his information reliable. (*People* v. *Hamilton, supra,* 71 Cal.2d 176, 180; *People* v. *Tillman, supra,* 238 Cal.App.2d 134, 138; *People* v. *Scoma, supra,* 71 Cal.2d 332, 336, fn. 3, 337-340.) In the instant case we must determine whether the magistrate's reliance on Speidel's report of

illegal activity was reasonable. Initially, we note that such reliance cannot be predicated on the basis of the so-called "citizen informer" cases which hold that a citizen who purports to be a victim of or to have witnessed a crime is a reliable informant upon the rationale that such a person, as the observer of criminal activity, acts openly in aid of the law enforcement when he reports the crime to the police. (*People* v. *Gardner,* 252 Cal.App.2d 320, 325 [60 Cal.Rptr. 321]; *People* v. *Griffin,* 250 Cal.App.2d 545, 550-552 [58 Cal.Rptr. 707]; *People* v. *Lewis,* 240 Cal.App.2d 546, 549-550 [49 Cal.Rptr. 579]; *People* v. *Scoma, supra,* 71 Cal.2d 332, 338, fn. 7; see *People* v. *Hogan,* 71 Cal.2d 888, 890 [80 Cal.Rptr. 28, 457 P.2d 868].) That rule does not apply where the informant is himself involved in the criminal activity. (*People* v. *Scoma, supra; Pollock* v. *Superior Court,* 272 Cal.App.2d 548, 552 [77 Cal.Rptr. 565]; *Ovalle* v. *Superior Court,* 202 Cal.App.2d 760, 763 [21 Cal.Rptr. 385]; *People* v. *Amos,* 181 Cal.App.2d 506, 509 [5 Cal.Rptr. 451].) Here Speidel was himself a participant in the lewd act.

Reliance on a report by an informer may, however, be established by a showing of past experience with the person giving the information or by the receipt of similar information from other sources or by the personal observation of the police. (*Willson* v. *Superior Court,* 46 Cal.2d 291, 295 [294 P.2d 36]; *People* v. *Reeves,* 61 Cal.2d 268, 274 [38 Cal.Rptr. 1, 391 P.2d 393]; *People* v. *Scoma, supra,* 71 Cal.2d 332, 338.) In the instant case, although Sergeant Brune's affidavit states that the informants were persons known to him to be law enforcement officers or employees of other governmental agencies and that he believed their reports to be true and reliable, the affidavit does not inform the magistrate of the underlying circumstances from which Brune concluded that the informant was credible or that his information was reliable, except the statement of informant himself. (See *Aguilar* v. *Texas, supra,* 378 U.S. 108, 114 [12 L.Ed.2d 723, 728, 84 S.Ct. 1509].) There is no showing that Brune had sufficient dealings with Speidel to give him cause to believe that Speidel was reliable; nor was there any showing of personal observation by the police which corroborated Speidel's report.

The reliability of the informant, however, is not necessarily limited to the officer's past experience with the informant or the personal observations of the police, but it may also be established by independent corroborating evidence. (*People* v. *Gallegos,* 62 Cal.2d 176, 179 [41 Cal.Rptr. 590, 397 P.2d 174]; *Willson* v. *Superior Court, supra,* 46 Cal.2d 291, 294; *People* v.

*Cedeno,* 218 Cal.App.2d 213, 222 [32 Cal.Rptr. 246]; *People* v. *Melchor,* 237 Cal.App.2d 685, 689 [47 Cal.Rptr. 235].) Such corroboration need not of itself amount to reasonable cause to arrest since its only purpose is to provide the element of reliability missing when the police have had no prior experience with the informer. (*People* v. *Lara,* 67 Cal.2d 365, 374-375 [62 Cal.Rptr. 586, 432 P.2d 202].) The required corroboration must, however, relate to the essential fact as to whether the defendant had violated the law. (*People* v. *Reeves, supra,* 61 Cal.2d 268, 274; *People* v. *Gallegos, supra,* 62 Cal.2d 176, 179; *People* v. *Coleman,* 258 Cal.App.2d 560, 564 [65 Cal.Rptr. 732].)

In the light of the foregoing this case narrows down to whether the information supplied by Speidel was sufficiently corroborated by the statements of Rambo and Gray. Adverting to Rambo's statement we perceive that it states that she was employed as a masseuse at the Alcron Massage Parlor at or about the time of the occurrence of the lewd acts narrated in Speidel's statement; that Rambo was told by the proprietress, Elizabeth Hora, that if Rambo was so inclined she could masturbate patrons who desired to be masturbated; and that on one occasion a patron solicited her to masturbate him. The essence of Gray's statement is that at or about the time of the events narrated in Speidel's statement he was masturbated at the Alcron Massage Parlor by a woman later identified as the proprietress, and, on another occasion, by a woman known as "Deanna" and later identified as Linda Anderson. We thus have independent evidence that acts of masturbation were being committed at the Alcron Massage Parlor by the proprietress and one of her employees at about the same time Speidel stated he had been masturbated at said premises by petitioner.

Although the facts stated by Rambo and Gray assert criminality on the part of parties other than petitioner, they disclose a type of activity which was being conducted at the subject massage parlor similar to that which is the basis of the accusation made by Speidel. These facts, since they indicate that Rambo and Gray were exposed to the same type of illegal activity as alleged by Speidel with respect to petitioner under similar circumstances and at or about the same time, provide a relationship to asserted criminal activity on the part of petitioner and constitute corroborative support for Speidel's accusation. Accordingly, Speidel's information rises above its doubtful source because the statements of Rambo and Gray impart credit to Speidel's information.

In view of the foregoing we conclude that Brune's declaration states facts from which the magistrate could reasonably conclude that Speidel's report of illegal activity on the part of petitioner was reliable. The declaration,

therefore, conforms to constitutional requirements and suffices to justify the issuance of the warrant.

The alternative writ of prohibition and the order to show cause why petitioner should not be discharged from custody are discharged and the petitions are denied.

Sims, J., and Elkington, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied February 5, 1970.