Filed 3/26/13  P. v. McClain CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.111.5.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>GERALD M. McCLAIN,<br><br>  Defendant and Appellant. | 2d Crim. No. B240332<br>(Super. Ct. No. 2011019949)<br>(Ventura County) |

Gerald M. McClain was granted probation with 270 days in the county jail after a jury convicted him of possession of a firearm and ammunition by a felon (Pen. Code §§ 12021, subd. (a)(1)); 12316, subd. (b)(1), and possession of methamphetamine and psilocybin.  (Health & Saf. Code, § 11377, subd. (a)).  He appeals, contending that evidence of prior drug use was erroneously admitted to show knowledge of the narcotic nature of the drugs seized.  We affirm.

*Facts and Procedural History*

On June 2, 2011, Ventura Police Officers Miguel Martinez and Anthony Snow were dispatched to 77 West Barnett Street on a disturbance call.  Officer Snow was familiar with the house and its owner, appellant.  Months earlier, Officer Snow helped a code enforcement officer "yellow-tag" the main house because it was uninhabitable. During the house inspection, appellant threw himself on the ground and yelled "just shoot

me."  After appellant calmed down, he said that he would stay in the small guesthouse at the rear of the main house.

When Officers Martinez and Snow responded to the June 2, 2011 disturbance call, the front door to the main house was ajar.  The house was unoccupied and cluttered.  As the officers approached the small guesthouse, they heard a loud television and movement.   The officers knocked three times and opened the screen door to see if anyone was hurt or needed assistance.  Appellant was hiding behind the bedroom door, reluctantly came out, and said that he lived there.

Appellant stood outside as the officers conducted a protective sweep.   A holstered handgun was in plain view on the couch  and appellant's wallet and mail were on a coffee table in front of the couch.

Knowing that appellant was a convicted felon, the officers searched for weapons and found two rifles and a loaded Ruger revolver.  The revolver had four live bullets and one spent round.  Empty gun holsters were on the bedroom floor and live ammo was scattered throughout the room.  In the top dresser drawer, Officer Martinez found a tray with methamphetamine residue, two digital scales, a straw, and an empty plastic baggie.  Three plastic baggies containing psilocybin mushrooms and pills were in a small wood chest.

Appellant defended on the theory that the drugs, guns, and ammo belonged to 71-year-old Denise Burchette.   Burchette said that she used drugs, that she had been appellant's girlfriend for 17 years, and that she lived alone in the guesthouse.   On cross-examination, Burchette admitted that she received mail at a second address on Channel Drive in Ventura and loved appellant enough to lie for him.

A neighbor, Robert Silvar, testified appellant and Burchette were living in the guesthouse.  Silvar had an unobstructed view of the guesthouse and saw appellant enter the guesthouse night and day and stay inside for long periods of time.

*Prior Drug Use*

2

At trial, the prosecution moved to introduce evidence that appellant was convicted of selling and possessing methamphetamine for sale in 2000. The trial court found the prior conviction was remote in time (Evid. Code, § 352) but allowed Deputy Probation Office Bonique Rodriguez to testify that, in 2010, appellant admitted snorting $20 of methamphetamine a day between the age of 36 to 41.[1]

Appellant claims that the trial court abused its discretion in admitting evidence of prior drug use to show knowledge of the narcotic nature of the drugs seized. We review for abuse of discretion. (Evid. Code, § 352; *People v. Memro* (1995) 11 Cal.4th 786, 864.) It is settled that prior uncharged crimes are admissible to prove a material fact such as intent, knowledge, or the absence of mistake or accident. (Evid. Code, § 1101, subd. (b); *People v. Ewoldt* (1994) 7 Cal.4th 380, 402-403.)

"The elements of the crime of possession of narcotics are physical or constructive possession thereof coupled with knowledge of the presence of the drug and its narcotic character. [Citations.] " (*People v. Francis* (1969) 71 Cal.2d 66, 73.) Prior drug use may be admitted to show defendant's knowledge of the narcotic nature of the contraband. (*People v. Pijal* (1973) 33 Cal.App.3d 682, 691; *People v. Horn* (1960) 187 Cal.App.2d 68, 75.) "It is not necessary for the defendant to raise an issue as to his knowledge before the People can introduce such evidence. [Citation.]" (*People v. Ellers* (1980) 108 Cal.App.3d 943, 953.)

In *People v. Spencer* (1956) 140 Cal.App.2d 97 (*Spencer*) defendant was tried for possession and sale of heroin. On cross-examination, defendant admitted that he knew what heroin was. (*Id.*, at p. 104.) Defendant was next asked about a misdemeanor conviction for possession of heroin. (*Ibid*.) The prosecution said it was for impeachment

---

[1] After Rodriguez testified on direct, the trial court admonished the jury: "Before we get to cross, ladies and gentlemen, I do want to advise you about the statement that was just provided to you. One of the elements on one of the charges in this case is that the prosecution needs to prove knowledge of the characteristic of the substance as methamphetamine. That is the only area where you're allowed to consider that statement. You're not to consider that statement . . . for any other purpose."

purposes. Defendant argued that the question was inflammatory. (*Id.*, at p. 102-103.) The jury was instructed that the prior conviction was not to be considered for impeachment purposes but to show " 'knowledge of the nature of the drug alleged to have been possessed by the defendant.' " (*Id.*, at p. 103.)

The Court of Appeal reversed on the ground that the prior conviction was cumulative. (*Id.*, at p. 104.) The jury was already told that appellant "knew what heroin was. . . . Since it was already clear that knowledge of the narcotic character of heroin was not in issue there was no reason, and no justification, for the admission of this evidence with the attendant danger of misuse by the jury despite the cautionary instruction of the court." (*Id.*, at p. 105.)

Unlike *Spencer*, appellant did not testify or stipulate to the narcotic nature of the drugs seized. (See e.g., *People v. Washington* (1979) 157 Cal.App.3d 488, 492 [error to admit evidence of prior unrelated narcotics activity to prove knowledge, where defendant offered to stipulate he was familiar with heroin].) Nor is this a close case in which the jury had to weigh appellant's credibility. (*Spencer, supra,* 140 Cal.App.2d at p. 105.) The not guilty plea required that the prosecution prove every element of the changed offenses including knowledge. (*People v. Steele* (2002) 27 Cal.4th 1230, 1243.) Evidence of prior drug use was properly admitted to show knowledge of the narcotic nature of the contraband seized. (Evid. Code, §§ 352; 1101, subd. (b); *People v. Williams* (2009) 170 Cal.App.4th 587, 607.) Appellant argues that the evidence was cumulative but such an objection "is almost always made to direct evidence, not circumstantial. While a trial judge might easily conclude that a third or fourth witness to the same event or opinion would be cumulative, it is the rare occasion when one of two different types of circumstantial evidence is correctly ruled cumulative." (*People v. Thornton* (2000) 85 Cal.App.4th 44, 48.)

Appellant argues that the prior drug use evidence was unnecessary because knowledge of the narcotic nature of methamphetamine can be inferred from the manner in which it was kept. The scales, straw, empty baggie, and methamphetamine powder on

4

the tray clearly showed that whoever possessed the methamphetamine knew of its narcotic nature.  The jury, however, had to determine appellant's knowledge, not the knowledge of a fictitious possessor.  In order to convict, it had to find that appellant not only possessed a controlled substance but knew of its presence and its narcotic nature.  (CALCRIM 2304.)

*Prosecutorial Misconduct*

Appellant complains that the prosecution argued that, based on appellant's prior drug use, the jury could infer that appellant knew methamphetamine was in the guesthouse.[2]  Appellant did not object, waiving the alleged error.  (*People v. Monterroso* (2004) 34 Cal.4th 743, 785-786.)  Waiver aside, a prosecutor is given wide latitude to argue his case and make fair comment on the evidence.  (*People v. Ledesma* (2006) 39 Cal.4th 641, 725.)  "When contraband is found in a place to which a defendant and others have access and over which none has exclusive control 'no sharp line can be drawn to distinguish the congeries of facts which will and that which will not constitute sufficient evidence of a defendant's knowledge of the presence of a narcotic. . . .' [Citation.]"  (*People v. Hutchison* (1969) 71 Cal.2d 342, 345.)

Appellant argues that he was unaware of the drugs because they were in a tiny guesthouse filled with clutter and junk.  The "clutter defense" was rejected by the

---

[2] The prosecution argued:  "[H]ave I proven to you that he unlawfully possessed a controlled substance?  Yes. . . .  Did he know about it?  Yes.  [¶]  Let's think about this.  Of course you know [the methamphetamine] didn't just inadvertently get there in his room and he didn't know about it especially when this is his drug of choice.  Do you think he's going to be ignorant to the fact that there's methamphetamine and all the instrumentalities there and not use it?  Of course he knew it was there.  It was stored with everything you need to use it.  The straw, the scale, the card.  All the empty baggies that have been previously used. [¶]  Look, with this kind of habit, ladies and gentlemen, you don't forget.  You don't forget that it's there.  You know that it's there.  And you don't sit there and watch your girlfriend do it for 11 years and you don't partake.  That's just not reasonable.  He knew the stuff was there because it was his and he was trying to protect it. [¶]  Does he know amount methamphetamine?  Does he know it is a drug?  Well, if he snorts it -- $20 every single day, you better believe it."

jury, and for good reason. The holstered pistol was in plain sight on the couch, as were the rifles, ammo, and gun holsters where appellant was hiding. Officer Snow testified that the methamphetamine residue, empty plastic baggies, drug scales and straw indicated "either frequent drug use or sales." Based on 17 years of experience, Officer Snow opined that "it is common for drugs and guns to run together." That has been this court's experience too. (See *People v. Collier* (2008) 166 Cal.App.4th 1374, 1378 ["'Guns often accompany drugs.'"].) It required no leap in logic for the jury to conclude that appellant knowing and unlawfully possessed firearms, ammunition, and narcotics.

The judgment is affirmed.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, P.J.

PERREN, J

6

Ryan J. Wright, Judge

Superior Court County of Los Angeles

_____

Mark R. Feeser, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Michael C. Keller, Deputy Attorney General, for Plaintiff and Respondent.