Filed 8/11/21  P. v. Smith CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JONATHAN DEWAYNE SMITH,<br><br>    Defendant and Appellant. | C089240<br><br>(Super. Ct. No. 17CF04196) |

Defendant Jonathan Dewayne Smith assaulted several women as they slept in 2014 and 2017.  In 2014, as a house party was winding down, defendant lay down beside a woman who had fallen asleep on the floor, pulled down her pants, and raped her.  A few years later, in 2017, defendant entered the homes of two other women as they slept, entered their rooms, and climbed on top of them.  But both women promptly awoke and then convinced defendant, who neither knew, to leave their homes.  Based on this conduct, a jury convicted defendant of one count of raping an unconscious person and

1

two counts of burglary.  The trial court afterward found true several allegations that lengthened the sentence for these offenses and then sentenced defendant to over 21 years in prison.

On appeal, defendant raises four arguments.  First, he contends the court wrongly admitted testimony about a previous burglary that had never been charged.  Second, he asserts the court improperly instructed the jury to consider a witness's level of certainty when evaluating the witness's testimony identifying defendant.  He reasons that psychologists have repeatedly found that a witness's level of certainty about an identification is, at best, a weak indicator of accuracy.  Third, based on a recent change in the law, defendant contends we should strike a one-year sentencing enhancement that the trial court imposed based on his criminal history.  And fourth, defendant claims the court violated his due process rights when it ordered him to pay criminal fees and fines without first holding a hearing to determine whether he had the ability to pay them.

We agree the challenged sentencing enhancement should be stricken.  In all other respects, we affirm.

BACKGROUND

I

*Factual Background*

The charges relevant to this appeal concern conduct from various dates in 2014 and 2017.

A.  *Rape of Jane Doe (Count 1)*

In the summer of 2014, Jane Doe went to a party at her friend's house in Chico. Doe and her friends played a few drinking games at the house and then left to meet other friends in downtown Chico, where they met defendant, who went by Ace.  After visiting a few house parties downtown, Doe, defendant, and others returned to Doe's friend's house.

2

In the early morning, as the party wound down, some people left and others—including Doe and defendant—found places to sleep around the house. Doe slept on the floor and defendant sat on a couch beside a woman who had passed out from drinking.

As others began falling asleep, defendant began rubbing the unconscious woman's leg. But another woman, who saw defendant, flashed her cell phone light on him, called him "nasty," and told him to move somewhere else. Defendant responded, "I didn't do anything," and then moved to the floor near Doe.

Shortly after, Doe, who was lying on her stomach, awoke to sharp pain. Her pants had been pulled down and she felt pain inside her vagina caused, she believed, by an erect penis. She rolled over and saw defendant above her. Shocked and scared, Doe screamed, kicked defendant, and ran to the backyard. Defendant pulled up his shorts and said, "Oh, no. She just kicked me in the face. I didn't try to rape her or nothing." He then left the house. Doe's sister afterward took Doe to the hospital.

B. *Burglary of Nicole D. (Count 4)*

In August 2017, Nicole D. and a few of her friends were in her living room in Chico when defendant, who introduced himself as Ace, walked in through the front door. Defendant claimed he assisted another woman back to the house the week before, but Nicole did not recognize him and, after becoming uncomfortable with defendant's presence, asked him to leave. Defendant complied. Shortly after, however, Nicole briefly saw defendant peeking in through her living room window.

Later that night, after Nicole had gone to bed, she woke to defendant kissing her neck. Nicole told him to leave and he complied. Nicole later called the police.

C. *Burglary of Christina M. (Count 7)*

A couple hours after Nicole told defendant to leave her house, another woman in Chico, Christina M., was awoken by her bedroom door opening. Believing it was her roommate's boyfriend, Christina called out, "Matt?" After a man replied, "yes," Christina went back to sleep.

3

But shortly after, she awoke with defendant on top of her, his legs straddling her hips and his hands touching her "lower area." As defendant tried to kiss her, Christina told him to get off. At first, she believed defendant was someone she knew. But after she grabbed her cell phone and turned on its light, she saw a man she had never seen before. Scared now, she again asked defendant to get off her and leave. But rather than leave, defendant asked if she wanted to use cocaine and hang out. Christina again asked defendant to leave but he ignored her request. Eventually, after Christina woke up her roommate and repeatedly asked him to leave, defendant finally left the house. Christina and her roommate later woke their house manager, who called the police.

D. *Burglary Involving Laptop Theft (Count 3)*

In August 2017, Matthew Suttles, who was sitting on the porch of a friend's house waiting for the friend to return home, heard footsteps along the side of the house and shortly after saw defendant round the corner of the house holding a laptop. Given defendant's location, Suttles believed that defendant must have come from inside the house. After Suttles asked defendant what he was doing, defendant dropped the laptop and walked away. Suttles retrieved the laptop—which he identified as his friend's laptop based on its distinctive stickers—and then noticed an open window along the side of the house.

Suttles, a moment later, remembered defendant's face from an earlier incident involving the theft of his own laptop. A few months before, in April 2017, Suttles had returned to his apartment to find his laptop missing and a cell phone on the floor. He called the police and turned over the cell phone. A few months later, after Suttles claimed the phone, the police returned the phone to Suttles. Suttles afterward learned the number for the phone, entered it into Facebook, and connected the number to defendant's Facebook page.

4

II

*Procedural Background*

In a consolidated information, as relevant here, the prosecution charged defendant with one count of raping an unconscious person (Pen. Code, § 261, subd. (a)(4)—count 1)[1] and three counts of burglary (§ 459—counts 3, 4, & 7). For the first burglary count (count 3), the prosecution proceeded on the theory that defendant entered the home in that count to commit a theft; and for the remaining burglary counts (counts 4 & 7), the prosecution proceeded on the theory that defendant entered the two homes in those counts with the intent of raping an unconscious person. (See § 459 [any person who enters a house (and certain other spaces) "with intent to commit grand or petit larceny or any felony is guilty of burglary"].) For all counts other than count 1, the information further alleged that defendant had a prior strike conviction (§§ 667, subds. (b)-(j), 1170.12), had served a prior prison term (§ 667.5, subd. (b)), and had previously been convicted of a serious felony (§ 667, subd. (a)(1)).

Following trial, a jury found defendant guilty on counts 1, 4, and 7, and not guilty on the remaining counts, including count 3. The trial court afterward, following a bench trial, found true the allegations that defendant had a prior strike conviction, had served a prior prison term, and had previously been convicted of a serious felony.

The court sentenced defendant to a total of 21 years eight months in prison. For count 4 (burglary of Nicole), the court sentenced him to the upper term of six years, doubled based on his prior strike conviction, for a total of 12 years. For count 1 (rape of Jane Doe), the court sentenced him to one-third the middle term of six years for a total of two years. And for count 7 (burglary of Christina), the court sentenced him to one-third the middle term of four years, doubled based on his prior strike conviction, for a total of

---

[1]     Undesignated statutory references are to the Penal Code.

5

two years eight months. Finally, the court sentenced defendant to five additional years in prison based on his prior serious felony and one additional year in prison because he had served a prior prison term. The court, however, stayed execution of the one-year enhancement.

Defendant timely appealed.

DISCUSSION

I

*Admission of Uncharged Burglary*

Defendant first, for two reasons, contends the trial court abused its discretion in allowing the prosecution to present evidence of an uncharged burglary—that is, a burglary for which there was testimony but that was not charged in this case.

Before turning to his specific contentions, we start with some additional background. Defendant's argument here concerns the testimony of Matthew Suttles. Before Suttles testified, the prosecutor told the court that he would testify about count 3—which, again, involved the theft of the laptop from Suttles's friend's house. But Suttles, the prosecution added, would also testify that he recognized defendant from an earlier incident involving the theft of his own laptop—which relates to the uncharged burglary. A few months before Suttles encountered defendant at the friend's house, Suttles returned to his apartment to find his laptop missing and a cell phone on the floor. He called the police, turned over the cell phone, and, a few months later, the police returned the phone to Suttles. Suttles afterward learned the number for the phone, entered it into Facebook, and then connected the number to defendant's Facebook page— which later allowed him to recognize defendant during the encounter at his friend's house.

Although defendant objected to the testimony concerning the theft of Suttles's laptop, calling it prejudicial and confusing, the trial court ultimately allowed it. It reasoned that the testimony about the uncharged burglary was admissible under Evidence

6

Code section 1101, which allows the introduction of a defendant's uncharged offenses "when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, [or] absence of mistake or accident . . .) other than his or her disposition to commit such an act." (Evid. Code, § 1101, subd. (b).) In the court's view, the testimony about the uncharged burglary was relevant to show identity, a common scheme, and intent. The court further found it inappropriate to exclude the testimony under Evidence Code section 352, which allows courts to exclude evidence if its probative value is substantially outweighed by the probability that its admission would "(a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." Suttles afterward testified as anticipated.

Following Suttles's testimony, in closing arguments, the prosecutor contended the uncharged burglary was relevant to show Suttles's ability to accurately identify defendant. In particular, she argued, Suttles already "knew who [defendant] was," and so was able to identify him during the burglary charged in count 3, "because a few months prior his house ha[d] been broken into, his laptop was stolen, and he found a phone" that had a number associated with defendant's Facebook page. Consistent with the prosecutor's closing arguments, the court's jury instructions also focused on the potential relevance of the uncharged burglary to the issue of identity. The court instructed the jury: "If you decide that the defendant committed the offenses, you may, but are not required to, consider that evidence [concerning the uncharged burglary] for the limited purpose of deciding whether" the "defendant was the person who committed the offenses alleged in this case."

With that background, we turn to defendant's two contentions. First, defendant asserts, the evidence of the uncharged burglary "had no tendency in reason to prove [his] 'motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or

7

accident' to commit" the burglary charged in count 3 or any of the other charged offenses.  We disagree.

Evidence Code section 1101, subdivision (a) generally bars admission of evidence of a defendant's other acts or offenses to prove the defendant's "conduct on a specified occasion."  So, for example, a prosecutor seeking to persuade a jury that a defendant committed theft on one "specified occasion" generally cannot introduce evidence that the defendant was convicted of theft in the past.  Evidence section 1101, subdivision (b) however, "provides a limited basis for admission" of this type of evidence.  (*People v. Williams* (1988) 44 Cal.3d 883, 904.)  As relevant here, it allows the introduction of a defendant's uncharged offenses "when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, [or] absence of mistake or accident . . .) other than his or her disposition to commit such an act."  (Evid. Code, § 1101, subd. (b).)

In this case, our focus is on the issue of identity.  Although, again, the trial court initially found the uncharged burglary relevant to show identity, intent, and a common scheme, the prosecutor ultimately only relied on the uncharged burglary to show identity and the court, similarly, only instructed on the issue of identity.  We thus limit our discussion to that topic.

The general standard for evaluating the relevance of other crimes' evidence to show identity—a standard that both parties focus on—is well established.  "To be relevant on the issue of identity," courts have long explained, "the uncharged crimes must be highly similar to the charged offenses.  [Citation.]"  (*People v. Kipp* (1998) 18 Cal.4th 349, 369.)  In particular, the charged and uncharged offenses must be so similar that they "display a ' "pattern and characteristics . . . so unusual and distinctive as to be like a signature." ' [Citation.]"  (*Id.* at p. 370.)  The charged and uncharged offenses, in other words, must be similar enough "to support the inference that the same person committed both acts."  (*People v. Ewoldt* (1994) 7 Cal.4th 380, 403.)

8

But although both parties look to this standard for evaluating the admission of the uncharged burglary here, we find it a poor fit for our facts. In general, we agree, "the uncharged crimes must be highly similar to the charged offenses" to establish relevance on the issue of identity. (*People v. Kipp*, *supra*, 18 Cal.4th at p. 369.) That is because, in these types of cases, courts are generally considering whether the charged and uncharged offenses disclose a distinctive modus operandi that supports "a strong inference that the defendant committed both crimes. [Citations.]" (*People v. Bradford* (1997) 15 Cal.4th 1229, 1316.) But the prosecutor's theory of admissibility in this case did not turn on any distinctive modus operandi. The prosecutor did not, for example, allege that the peculiar characteristics of the uncharged burglary tended to show that defendant, and not some other person, committed the burglary charged in count 3. She instead alleged that the facts surrounding the uncharged burglary tended to show that Suttles could accurately identify defendant. In particular, the prosecutor alleged, these facts tended to show that Suttles already "knew who [defendant] was" and so could identify him at the scene of the charged burglary.

Our facts, in this respect, have little to do with the typical case involving an uncharged act admitted to prove identity. And on our somewhat usual facts—involving a witness who was able to identify a defendant in the act of committing a crime on one occasion because, on a prior occasion, the defendant committed a similar crime against the witness—the test for admissibility is quite different. The California Supreme Court's decision in *People v. Beamon* (1973) 8 Cal.3d 625 (*Beamon*) demonstrates the point. The defendant in that case pulled a gun on the driver of a delivery truck and took his truck. "After the truck had been driven a few blocks [the witness] looked up at the [defendant]. Eighteen months earlier he had suffered a similar highjacking and he now recognized [the] defendant as the person who had been tried for and acquitted of criminal charges filed in connection therewith." (*Id.* at p. 630.) After the defendant was charged for the second truck robbery, the driver testified at trial about both the second robbery and the

9

first robbery that had occurred some 18 months earlier. (*Id.* at p. 632.) On appeal, the defendant contended the trial court wrongly admitted evidence of this prior wrongful conduct. (*Ibid.*) But the California Supreme Court disagreed. The driver's identification of the defendant, the court explained, was "materially buttressed by evidence that the victim was familiar with and able to recognize defendant because of observations made at a time prior to the kidnaping and robbery. Evidence of the circumstances which made it possible for the victim to identify defendant, although it disclosed a prior highjacking, was thus relevant to establish the credibility of the identification." (*Ibid.*)

The court in *People v. Ellers* (1980) 108 Cal.App.3d 943 (*Ellers*) reasoned similarly. An informant in that case, working with the police, purchased heroin from a drug dealer and then identified the defendant as the dealer. (*Id.* at p. 948.) In part to bolster the informant's identification, the informant at trial "testified he had known [the defendant] for about ten years and had purchased heroin from him during those years." (*Id.* at pp. 952-953.) On appeal, the defendant contended the trial court wrongly admitted evidence of these prior heroin sales. But the court disagreed, reasoning in part that "this evidence was probative as to whether the informant indeed knew the identity of the man who sold him the heroin." (*Id.* at p. 953.)

We find similarly here. The prosecution, again, sought to introduce Suttles's testimony about the uncharged burglary to prove some fact other than his disposition to commit burglaries—namely, to prove that Suttles could ably identify defendant based on his past familiarity with defendant. Considering *Beamon* and *Ellers*, we conclude that the court did not abuse its discretion in agreeing that Suttles's testimony about the uncharged burglary was admissible for this reason. To use the *Beamon* court's language, Suttles's identification of defendant "is materially buttressed by evidence that [Suttles] was familiar with and able to recognize [defendant] because of observations made at a time prior to the [charged burglary]. Evidence of the circumstances which made it possible for [Suttles] to identify [defendant], although it disclosed a prior [burglary], was thus

10

relevant to establish the credibility of the identification." (*Beamon*, *supra*, 8 Cal.3d at p. 632.)

Defendant next contends that, even if the uncharged burglary had some relevance, "the court nonetheless erred by admitting the evidence because the weak probative value was far outweighed by the powerful prejudice this negative character evidence had on [defendant]." We reject this argument too.

Again, under Evidence Code section 352, evidence may be excluded if its probative value is substantially outweighed by the probability that its admission would "(a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." We decline, however, to find that the trial court abused its discretion in admitting Suttles's testimony. Suttles's testimony about the uncharged burglary was clearly relevant to establish the credibility of his identification of defendant—a critical issue for count 3. And although this testimony was prejudicial to defendant to an extent—just as is true of all evidence of uncharged offenses—we decline to find that it was unduly prejudicial. The testimony about the uncharged burglary was brief (covering less than 10 pages of the transcript), required no additional witnesses, and concerned a crime no more inflammatory than the burglary charged in count 3. Considering these facts and viewing the evidence in the light most favorable to the trial court's ruling, we find no abuse of discretion.

II

*Jury Instructions on Eyewitness Testimony*

Defendant next takes issue with the trial court's instructing the jury about eyewitness testimony using CALCRIM No. 315. That instruction states: "You have heard eyewitness testimony identifying the defendant. As with any other witness, you must decide whether an eyewitness gave truthful and accurate testimony." It then instructs the jury, when "evaluating identification testimony," to consider various questions, including the following question: "How certain was the witness when he or

11

she made an identification?" Taking issue with this instruction, defendant contends "[e]volving case law and scientific research support the rejection of witness certainty as a valid factor in evaluating eyewitness identification. The trial court's instruction thus authorized [defendant's] conviction based upon unreliable evidence [that witness certainty equals accuracy], in violation of his federal constitutional right to due process." Although we acknowledge that this instruction could mislead jurors, we find no violation of defendant's due process rights.

At the time of defendant's trial, California Supreme Court precedent "specifically approved" of a similar jury instruction on witness certainty. (*People v. Sanchez* (2016) 63 Cal.4th 411, 462.) But since then, the court has "acknowledg[ed] that this form of instruction has the potential to mislead jurors." (*People v. Lemcke* (2021) 11 Cal.5th 644 (*Lemcke*).) The court reasoned that jurors often assume that a certain identification is more likely to be accurate, an assumption that CALCRIM No. 315 tends to reinforce, even though "[t]here is near unanimity in the empirical research that ' " 'under most circumstances, witness confidence or certainty is not a good indicator of identification accuracy." ' [Citations.]" (*Lemcke,* at pp. 665-666.)

But although, for these reasons, we acknowledge that CALCRIM No. 315 has the potential to mislead jurors, we reject defendant's contention that this instruction "permitted the jury to base its verdict upon unreliable evidence that witness certainty equals accuracy." As the court in *Lemcke* explained in rejecting a similar challenge, "the instruction does not direct the jury that 'certainty equals accuracy.' [Citation.] Nor does the instruction state that the jury must presume an identification is accurate if the eyewitness has expressed certainty. [Citation.] Instead, the instruction merely lists the witness's level of certainty at the time of identification as one of 15 different factors that the jury should consider when evaluating the credibility and accuracy of eyewitness testimony. The instruction leaves the jury to decide whether the witness expressed a credible claim of certainty and what weight, if any, should be placed on that certainty in

12

relation to the numerous other factors listed in CALCRIM No. 315." (*Lemcke*, *supra*, 11 Cal.5th at p. 657.) As the *Lemcke* court also noted, another standard jury instruction, which was offered here, further emphasizes the jury's role in evaluating witness credibility and deciding the weight of witness testimony, explaining that "[p]eople sometimes honestly . . . make mistakes about what they remember" and that jurors are responsible for "judg[ing] the credibility or believability of the witnesses." (See *id.* at p. 659.)

Considering the jury instructions as a whole, together with the *Lemcke* court's construction of CALCRIM No. 315, we reject defendant's contention that CALCRIM No. 315 "permitted the jury to base its verdict upon unreliable evidence that witness certainty equals accuracy." (See *Lemcke*, *supra*, 11 Cal.5th at p. 661.) The instruction, as discussed, has its shortcomings. But " ' "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation. The question is ' "whether the ailing instruction . . . so infected the entire trial that the resulting conviction violates due process." ' " ' [Citation.]" (*Id.* at p. 655.) Because defendant has not made this showing, we reject his argument.

III

*One-Year Sentencing Enhancement*

Defendant next contends we should strike his one-year prison enhancement premised on section 667.5, subdivision (b). Again, the trial court imposed, but then stayed, a one-year prison enhancement for defendant's prior prison term. But according to defendant, the one-year enhancement must be stricken for two reasons. First, he asserts, the court had no authority to stay the enhancement. It either had to impose or strike the enhancement, and, defendant argues, we should find that the court intended to strike, not merely stay, the enhancement here. Second, he asserts, a recent amendment to section 667.5, subdivision (b) applies retroactively and requires us to strike the enhancement. We agree with his latter argument.

13

At the time of sentencing, section 667.5, subdivision (b) required courts that were sentencing a defendant to prison on a "new offense" to impose an additional year in prison if the defendant " '(1) was previously convicted of a felony; (2) was imprisoned as a result of that conviction; (3) completed that term of imprisonment; and (4) did not remain free for five years of both prison custody and the commission of a new offense resulting in a felony conviction.' [Citation.]" (*People v. Buycks* (2018) 5 Cal.5th 857, 889.) But following defendant's sentencing, with the passage of Senate Bill No. 136, the Legislature amended section 667.5, subdivision (b) to limit application of this sentencing enhancement. No longer does it apply for all prison priors. It instead now applies only for prison priors for "sexually violent offense[s] as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code." (Stats. 2019, ch. 590, § 1.)

As both parties agree, had defendant been sentenced today, the court could not have imposed the one-year enhancement under section 667.5, subdivision (b), because his prison prior was not for a sexually violent offense. And as both parties further agree, because the judgment in this case is not yet final, defendant is entitled to the benefit of this statutory amendment retroactively. (See *People v. Reneaux* (2020) 50 Cal.App.5th 852, 876 ["Because [Senate Bill No.] 136 became effective before defendant's judgment became final, we agree with the parties that the amended law applies to him retroactively"].) We thus strike the prison enhancement imposed under section 667.5, subdivision (b).

IV

*Fees and Fines*

Finally, defendant contends the trial court violated his due process rights and imposed excessive fines when it ordered him to pay criminal fees and fines without first holding a hearing to determine whether he had the ability to pay them.

Defendant's argument relies on the Second District Court of Appeal's decision in *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). The court there considered

whether the due process clauses of the state and federal Constitutions limited a trial court's ability to impose assessments and fines on indigent defendants. It found they did. According to the court, "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes court facilities and court operations assessments under Penal Code section 1465.8 and Government Code section 70373." (*Id.* at p. 1164.) And, the court went on, although a statute imposing restitution fines (§ 1202.4) largely "bars consideration of a defendant's ability to pay . . ., the execution of any restitution fine imposed under this statute must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine." (*Dueñas*, at p. 1164.) A few months later, the same court that authored *Dueñas* clarified its ruling. Although in *Dueñas* it indicated that a trial court must always conduct an ability to pay hearing before imposing fees and fines, the same panel later clarified that a court must hold this hearing only if the defendant first raises the issue. (*People v. Castellano* (2019) 33 Cal.App.5th 485, 490-491.)

Relying on *Dueñas*, defendant contends the trial court here violated his due process rights in imposing fees and fines without first considering his ability to pay. As he notes, the trial court ordered him to pay various fees and fines, including, for example, a $300 restitution fine (§ 1202.4, subd. (b)), a $120 court security fee (§ 1465.8, $40 per count), and a $90 conviction assessment fee (Gov. Code, § 70373, $30 per count). But the court never held a hearing to determine if defendant could pay these amounts, and, relying on *Dueñas*, defendant now takes issue with the court's failure to do so.

Without needing to address the merits of *Dueñas*, we find defendant forfeited his argument. Defendant was sentenced in March 2020, several months after the publication of *Dueñas*. But even with the benefit of *Dueñas*'s reasoning, defendant never attempted to argue that he lacked the ability to pay the imposed fees and fines at the trial level. Although defendant contends this should not matter, reasoning that the prosecution had

15

the burden to prove his ability to pay, not the other way around, we find differently. Consistent with most courts that have considered this issue, we find defendants have the "burden to make a record below as to their ability to pay these assessments."  (*People v. Kopp* (2019) 38 Cal.App.5th 47, 96, rev. granted Nov. 13, 2019, S257844; see also *People v. Castellano*, *supra*, 33 Cal.App.5th at p. 490 ["Consistent with *Dueñas*, a defendant must in the first instance contest in the trial court his or her ability to pay the fines, fees and assessments to be imposed and at a hearing present evidence of his or her inability to pay the amounts contemplated by the trial court."].)  A defendant, after all, is clearly the best source of information about his or her own ability to pay a penalty, and so "[i]t should be incumbent upon the defendant to affirmatively argue against application of the fine and demonstrate why it should not be imposed."  (See *People v. McMahan* (1992) 3 Cal.App.4th 740, 749-750 ["the most knowledgeable person regarding the defendant's ability to pay would be the defendant himself"].)

Those considerations in mind, because defendant failed to object at the trial level, we find he forfeited his objection to the imposed fees and fines.  (See *People v. Nelson* (2011) 51 Cal.4th 198, 227 [the defendant forfeited his objection to a $10,000 restitution fine based on "his ability to pay" by "failing to object at his sentencing hearing"].)

## DISPOSITION

The judgment is modified to strike the stayed one-year enhancement under section 667.5, subdivision (b).  The trial court is directed to prepare an amended abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation.  As modified, the judgment is affirmed.


_____/s/_____
BLEASE, Acting P. J.



We concur:



_____/s/_____
MURRAY, J.



_____/s/_____
KRAUSE, J.


17